Myron L. **KENLER** and Regina O.
Kenler, Plaintiffs, Appellants,

v.

**CANAL NATIONAL BANK,**
Defendant, Appellee.

No. 73–1100.

United States Court of Appeals,
First Circuit.

Oct. 18, 1973.

John Alterman, Miami, Fla., with whom Daniel G. Lilley, Portland, Me., was on brief, for plaintiffs, appellants.

Jeremiah D. Newbury, Portland, Me., with whom Charles W. Allen, Albert G. Ayre and Pierce, Atwood, Scribner, Allen & McKusick, Portland, Me., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

In this diversity action, plaintiffs (Dr. and Mrs. Kenler) appeal from a district court judgment which granted defendant's (Canal National Bank) motion for summary judgment. The Kenlers are presently the owners of 7,087 shares of "legended" investment stock of the now bankrupt Maine Insurance Company ("the Company"). In prosecuting this suit, they seek to hold the Bank, as transfer agent for the Company liable in damages for its alleged wrongful refusal to remove the restrictive legends on their shares, which refusal resulted in the inability of the plaintiffs to sell said shares prior to the time the Company became bankrupt. The relevant facts can be summarized as follows.

In 1964 and 1965 Dr. Kenler acquired certain investment shares in the Company pursuant to an unregistered "private offering." At the time of issuance, the stock certificates bore a restrictive legend, commonly placed upon shares acquired in such a manner, which provided:

> The shares represented by this certificate have not been registered under the Securities Act of 1933. The shares have been acquired for investment and may not be reoffered, sold, transferred, pledged or hypothecated in the absence of an effective Registration Statement for the shares under the Securities Act of 1933 or a prior opinion of counsel, satisfactory to the Company, that registration is not required under that Act.

During the latter part of 1966 Dr. Kenler became seriously ill and eventually his illness compelled him to give up medical practice and retire to Florida with his wife. At that time, Kenler transferred most of his stock in the Company to his wife, retaining only a small percentage of the original shares. In the fall of 1968 Mrs. Kenler sought to sell her stock in order to supplement her husband's depleted income, and to assist in meeting his increasing medical expenses. On October 14, 1968, Mrs. Kenler, in a letter to the Securities and Exchange Commission, explained her situation and requested a "No Action" letter on the proposed sale of her shares. Two months later, Special Counsel for the

SEC Division of Corporation Finance replied, and, in noting that Dr. Kenler was on the board of directors of the Company, indicated that any sales of the restricted stock had to conform with the strictures imposed by then existing Rule 154.[1] Shortly thereafter, on December 12, 1968, plaintiffs' broker transmitted Mrs. Kenler's shares and the SEC letter to the Bank, and requested that new certificates be issued in small lots without restrictive legends. Seeking guidance, the Bank promptly forwarded the shares and the SEC letter to the Company, and requested advice on what posture to adopt. Although there is no evidence in the record to indicate that the Company ever replied directly to the Bank, it is undisputed that on January 14, 1969, the president of the Company wrote the Kenlers, returned their shares and at that time informed them that, after consultations with counsel, "we cannot instruct the transfer agent to remove the restrictive legend while you are still a director of the company." The Kenlers apparently accepted this response, and pursued the matter no further, although Dr. Kenler did resign as a director the following May.

The matter lay dormant for over a year and a half. Then, on July 30, 1970, Dr. and Mrs. Kenler again wrote to the SEC, explained the circumstances (including the fact that Kenler had resigned as a director) and requested a "No Action" letter regarding the proposed sale of all their 7,087 shares. This time their efforts were successful, and on August 25, 1970, the Assistant Chief Counsel of the SEC Division of Corporation Finance issued a "No Action" letter.[2]

At this point, the Kenlers maintain that they immediately forwarded their shares and the "No Action" letter to the defendant Bank, and requested the issuance of new certificates without the restrictive legends. Although the Bank has denied ever receiving this request, they have stipulated, as indeed they must, that for the purposes of their motion for summary judgment, the receipt of this request should be accepted as a matter of fact. Receiving no response from the Bank, Dr. Kenler, on November 4, 1970, again wrote to the defendant, inquiring as to whether it was the transfer agent for the Company. In this correspondence, he indicated that he held a "No Action" letter and again requested removal of the restrictive legends from the shares. Approximately a week later, the Bank informed Dr. Kenler that his November 4, letter had been transmitted to the Company. The Bank

---

1. The SEC response was not a "No Action" letter as had been requested by Mrs. Kenler. Indeed, the letter expressed no opinion whatsoever regarding the question of whether the Kenlers could actually comply with the requirements of Rule 154. The correspondence stated:

"This refers to your letter dated October 14, 1968, in connection with a proposed sale of 5,250 shares of Maine Insurance Company common stock of which 5,000 were received from your husband in November 1966 and 250 were received as a stock dividend on these shares. It appears that your husband purchased these shares in 1964 for investment, and that in December 1966 he became totally disabled and was obliged to retire from the practice of medicine and to move to Florida. "In view of your husband's position on the company's board of directors it appears that he may be part of a controlling group of Maine Insurance Company. Consequently, any sales of this company's shares by you and your husband should be limited to the provisions of Rule 154 under the Securities Act of 1933. In addition sales by you and your husband should be considered in the aggregate for the purpose of determining the maximum number of shares which may be sold in any six month period. We are enclosing a copy of Securities Act Release No. 4818 which discusses the broker's exemption provided by Rule 154."

Rule 154 has subsequently been replaced by the new Rule 144. For a detailed discussion of Rule 144, see Securities Act Release No. 5306 (Sept. 26, 1972).

2. On the basis of specific facts presented to the Commission by the Kenlers, the Assistant Chief Counsel replied that "this Division will not recommend any action to the Commission if you sell 7,087 shares of the Company's stock without compliance with the registration provisions of the Securities Act of 1933."

also stated that it had no record of any previous letter. On November 14, 1970, Kenler wrote to the Bank once more, demanding to know if it was the transfer agent. In a letter dated November 19, 1970, the Bank acknowledged that it was the Company's transfer agent, and reiterated that it had forwarded Kenler's November 4 correspondence to the Company for action thereon.

No further correspondence between the plaintiffs and the defendant appears in the record. At no time did the Bank remove the legends from the Kenler stock, and, consequently, that stock was never sold. On December 31, 1970, the Maine Insurance Commissioner began receivership proceedings against the Company, and two weeks later the Company was formally adjudged insolvent, with the result that plaintiffs' shares became valueless.

 Plaintiffs contend that the failure of the Bank to remove the legends on their stock and to issue new unrestricted certificates as requested, constituted a breach of duty imposed on the Bank, as transfer agent, by the Maine Uniform Commercial Code. 11 Maine Revised Statutes Annotated §§ 8–401, 8–406. Defendant maintains, however, that the UCC has no application to the facts of this case, and that at common law, it is undisputed that a transfer agent cannot be held liable to a stockholder in damages for mere "nonfeasance," (such as failure to act to remove the legends).[3] *See* Hulse v. Consolidat-

ed Quicksilver Min. Corp., 65 Idaho 768, 154 P.2d 149 (1944); Palmer v. O'Bannon, 253 Mass. 8, 149 N.E. 112 (1925); 12 Fletcher Cyc. Corp. § 5525 (Perm. ed. 1971).

The threshold problem of UCC applicability is governed by 11 M.R.S.A. § 8–401(1), which states in relevant part: "Where a security in registered form is presented to the issuer *with a request to register transfer,* the issuer is under a duty to register the transfer as requested, if [conditions omitted]." (Emphasis added.) By operation of 11 M.R.S.A. § 8–406(1),[4] a coextensive duty is imposed upon the transfer agent, and wrongful refusal by the transfer agent to register a requested transfer makes the agent liable to the damaged shareholder. 11 M.R.S.A. § 8–401(2).

A difficult state law question is presented by plaintiffs' contention that their repeated requests for removal of the restrictive legends on their investment shares (which would be admittedly, the obvious first step in, and a necessary incident to the contemplated transfer of such stock) should be considered as a "request to register transfer" within the meaning of § 8–401(1). This is a question of first impression, not only under the law of Maine, but also under the law of every jurisdiction that has adopted the Uniform Commercial Code. It is, however, a question that we need not pass upon here since, in our view, even if this threshold issue of UCC applicability were resolved in plaintiffs'

3. The theory behind this common law rule is that since the transfer agent serves only as agent for the corporation, it owes no direct or affirmative obligation to the individual stockholder to register transfer of his shares. *See, e. g.,* Nicholson v. Morgan, 119 Misc. 309, 196 N.Y.S. 147 (N.Y.Mun.Ct. 1922). For wrongful refusal to transfer shares, the transfer agent would be liable in damages solely to the corporation, which in turn would be liable to its injured shareholders. *See, e. g.,* Fowler v. National City Bank, 49 Ga.App. 435, 176 S.E. 113 (Ct. App.1934); 12 Fletcher Cyc. Corp. §§ 5523, 5525 (Perm. ed. 1971). In situations to which it would apply, the UCC is clear in its intent to abrogate the common law immunity

of transfer agents in suits brought by wrongfully injured shareholders. See 11 M. R.S.A. § 8–406, U.C.C. Comment 1.

4. 11 M.R.S.A. § 8–406(1) provides:
"Where a person acts as authenticating trustee, transfer agent, registrar or other agent for an issuer in the registration of transfers of its securities or in the issue of new securities or in the cancellation of surrendered securities,

 * * * * *

(b) He has with regard to the particular functions he performs the same obligation to the holder or owner of the security and has the same rights and privileges as the issuer has in regard to those functions."

favor, recovery under that statute would nonetheless be precluded. Consequently, our discussion will proceed on the *arguendo* assumption that where removal of restrictive legends on investment stock is mandatory in order to effect transfer of the shares, and where it is clear to the transfer agent that the requesting shareholder intends to immediately dispose of his shares,[5] a request for removal of the legends and the issuance of unrestricted certificates is substantially equivalent to a "request to register transfer" of those shares.

■ Before the transfer agent has any obligation to register transfer under 11 M.R.S.A. § 8–401(1), certain specific statutory conditions must be met. 11 M.R.S.A. § 8–401(1)(a)–(e). The only condition relevant to our inquiry is 11 M.R.S.A. § 8–401(1)(e), which requires that the requested transfer be "in fact rightful or . . . to a bona fide purchaser." Plaintiffs do not argue, nor can they, that their requests for legend removal, even if considered as requests for transfer, could be said to involve a transfer to a bona fide purchaser.[6] Rather, they maintain that since their requests for transfer were "rightful," the defendant Bank breached its duty by refusing to comply with these requests. We do not agree. Although Maine law is silent on the point, we believe that in the absence of tendering the necessary "opinion of counsel," as expressly required by the restrictive

legend,[7] the requested transfers may not be said to be rightful.

■ Recognizing that in order to comply with 11 M.R.S.A. § 8–401(1)(e) that the requisite opinion of counsel must be present, plaintiffs' attempt to construct the argument that a tendered SEC "No Action" letter should be construed to satisfy this requirement. With respect to the 1968 request, this contention provides no solace to plaintiffs, since the SEC response to their inquiry at that time may not be said to constitute such a letter.[8] At best, the SEC merely informed Mrs. Kenler that in order to legally effectuate sale of her stock, she must comply with Rule 154. The SEC expressed absolutely no opinion as to whether Mrs. Kenler could in fact comply with the qualitative and quantitative limitations imposed by that Rule. And while it is true that in 1970, the SEC did give the Kenlers a true "No Action" letter on their proposed stock sale, we hold that such a "No Action" letter can not be said to constitute an opinion of counsel as required by the restrictive legend.

The obvious purpose behind the restrictive legends' requirement of an opinion of counsel is to provide maximum protection to the corporation from potential liability for unlawful sales of securities in violation of § 5 of the Securities Act, 15 U.S.C. § 77e (1970). The "No Action" letter, which is simply a non-binding recommendation by an SEC

5. The correspondence between plaintiffs, their broker and the Bank make it clear that with regard to both the 1968 and 1970 requests for legend removal, the Bank was well aware that plaintiffs desired to promptly attempt to transfer their shares to various prospective purchasers, who, of course, could not be procured until after the legends had been removed.

6. A "bona fide purchaser" is defined as "a purchaser *for value* in good faith and without notice of any adverse claim who takes delivery of a security in bearer form or of one in registered form issued to him or endorsed to him or in blank." 11 M.R.S.A. § 8–302 (emphasis added). Even under our *arguendo* assumption that requests for leg-

end removal constitute § 8–401(1) requests for transfer, it is clear that the Kenlers, who would actually receive the unlegended certificates, can in no way be said to be purchasers for value.

7. In order to accomplish a transfer, the restrictive legend required the existence of either a valid Registration Statement covering the shares, or an opinion of counsel that registration was not required. Since it is apparent that no valid Registration Statement was in effect at the time of each requested transfer, it was incumbent upon plaintiffs to supply an appropriate opinion of counsel in order to make their requests for transfer "rightful."

8. *See* footnote 1, *supra*.

staff counsel, 6 Loss, Securities Regulation 4023 (1969), does not adequately provide the corporation with the protective safeguards contemplated by the "opinion of counsel" provision. In the first place, where, as here, no outside counsel has been retained, the "No Action" letter will be rendered strictly on the basis of a set of facts represented by the stockholder as accurate and complete. The SEC does not conduct an independent investigation of all the circumstances surrounding the stockholder's attempt to dispose of his securities without registration, nor could it be expected to do so. Since the stockholder is rarely an attorney steeped in the learning and experience of the corporate securities bar, the validity of the "No Action" letter is entirely dependent upon the extent to which his representations to the SEC fully reflect the salient and legally relevant details of his particular situation. In other words, the degree of protection afforded to the corporation, should it be forced to accept this "No Action" letter as satisfying the "opinion of counsel" provision, can be defined entirely in terms of a layman's vastly limited expertise in the complex field of securities law. We feel that such questionable protection certainly does not provide the safeguards expected by the corporation when it imposed the "opinion of counsel" provision in the restrictive legend. On the other hand, the necessary protections are fully provided where the opinion is rendered by competent private counsel. Because experienced legal counsel can be expected to be fully aware of the requirements that must be met in order to safely transfer restricted stock without registration, and, accordingly, to appropriately investigate the particular circumstances of his stockholder-client, the corporation is in a much better position to rely on the accuracy and correctness of an opinion rendered by such counsel.

Moreover, there is a second important distinction between the opinion of competent counsel, and an SEC "No Action" letter. Where counsel has negligently erred in rendering his opinion, with the result that transfer of the stock causes the corporation to be subjected to civil liability for violation of the Securities Act, a remedy would presumably exist in common law tort in favor of the corporation against such private counsel. However, under the doctrine of sovereign immunity, a similar common law action clearly would not be available against the SEC for negligence in the preparation of a "No Action" letter. Thus, a potentially important safeguard is guaranteed to the corporation if the "opinion of counsel" provision in the restrictive legend were read to exclude the SEC "No Action" letter.

The cases cited by plaintiffs for the proposition that a "No Action" letter does constitute the requisite opinion of counsel are entirely inapposite and were adequately distinguished in the decision of the district court.[9] We thus conclude that a "No Action" letter does

---

9. The district court correctly concluded that: "The three cases upon which plaintiffs rely are plainly distinguishable. In Kanton v. United States Plastics, Inc., 248 F.Supp. 353 (D.N.J.1965), the plaintiff supplied a favorable opinion of counsel *and* a "No Action" letter from the SEC. *See* Petrillo v. Seven Arts Productions, Ltd., [CCH Fed.Sec.L.Rep. par. 91,921 (Sup.Ct.N.Y. Apr. 7, 1967)] at 96,172. As in *Kanton*, the court in Riskin v. National Computer Analysts, Inc., 62 Misc.2d 605, 308 N.Y.S. 2d 985 (Sup.Ct.1970), modified, 37 A.D.2d 952, 326 N.Y.S.2d 419 (App.Div.1971), nowhere held that a "no action" letter constituted the "opinion of counsel to the company" specified by the restrictive legend on the plaintiff's share certificates. . . . Finally, Gasarch v. Ormand Industries, Inc., 346 F.Supp. 550 (S.D.N.Y.1972) did not present the issue of whether or not a "no action" letter constitutes the required opinion of counsel within the meaning of a restrictive legend. . . . To the extent that *Gasarch* may be read to indicate, in *dictum*, that under New York law, in the absence of bad faith, a "no action" letter may require a transfer agent to effect a transfer despite a restrictive legend, the New York cases cited by the court do not support such a view. [Citation omitted]" (Emphasis in original).

not comport with the full protections intended to be accorded the corporation by the provision in the restrictive legend for an "opinion of counsel." Therefore, since no appropriate opinion of counsel was, in fact, tendered by the Kenlers, their requests for transfer were not "rightful," and consequently the Bank had no duty under the UCC to remove the legends and issue new unrestricted certificates.

Affirmed.