**Susan BENDER, Plaintiff,**

v.

**MEMORY METALS, INC., a Delaware corporation, Defendant.**

Court of Chancery of Delaware,
New Castle County.

Submitted: June 12, 1986.
Decided: July 30, 1986.

Louis J. Finger and Gregory V. Varallo of Richards, Layton & Finger, Wilmington, and Stein, Davidoff & Malito, New York City, for plaintiff.

A. Gilchrist Sparks, III, and Donald E. Reid, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.

OPINION

JACOBS, Vice-Chancellor.

The plaintiff, Susan Bender, is the owner of 100,000 shares of the issued and outstanding common stock of defendant Memory Metals, Inc. ("Memory"). Ms. Bender filed this action on March 26, 1986, seeking to compel Memory to reissue to her a certificate for 100,000 shares of Memory common stock without the restrictive investment legend that is imprinted on her present certificate. In its answer Memory denied that it has any obligation to issue a new, unrestricted stock certificate to the plaintiff. Memory also moved to stay this action pending the outcome of a lawsuit brought on March 11, 1986 by Memory's Chief Executive Officer against the plaintiff and her husband in the United States District Court for the Southern District of New York. *Rogen v. Bender and Scheer,* 86 Civ. 2058 (MJL) ("the New York action").

Both parties subsequently filed cross-motions for summary judgment. This is the decision of the Court, after briefing and argument, on the parties' cross-motions for summary judgment and on the defendant's motion to stay.

I. *The Facts*

Except where otherwise noted, the facts are undisputed. Memory was formed as a Delaware corporation in 1981 and is engaged in the business of developing and commercially exploiting advances in metallurgy. One of Memory's founders, and at all relevant times its Chief Executive Officer, is Neil E. Rogen ("Rogen"), who owns approximately 30% of Memory's outstanding common shares and is Memory's largest single stockholder.

At present Memory has issued and outstanding 6,315,000 common shares which are traded over the counter. When it was founded in 1981, Memory issued 1,000 shares to Rogen. In March, 1983, Memory issued an additional 1,950,000 shares to Rogen in return for Rogen's transfer to Memory of certain patent rights, a transaction

that was recorded on Memory's books at $.01 per share. Approximately 1,400,000 additional shares were issued to other officers of Memory at $.01 per share, and thereafter 2,000,000 more shares were issued pursuant to private offering memoranda. Finally, in March, 1985, Memory sold an additional 1,100,000 shares pursuant to a public offering under a Registration Statement filed with the Securities and Exchange Commission ("SEC") on April 28, 1984.

When Rogen received his additional 1,950,000 shares in March, 1983, he sold 100,000 of those shares to the plaintiff, Susan Bender, in a private transaction. Although there is now a dispute as to what was to be the consideration for those shares, it is undisputed that the consideration included the payment by Ms. Bender of $.01 per share, *i.e.*, a total of $1,000 in cash, to Rogen. It is also undisputed that Ms. Bender paid Rogen the $1,000. Because the 100,000 shares sold to the plaintiff were not registered under the Securities Act of 1933 ("the 1933 Act")[1] the certificate representing her shares was imprinted with the following legend:

THE SECURITIES REPRESENTED HEREBY WERE ISSUED IN A TRANSACTION NOT REGISTERED UNDER THE SECURITIES ACT OF 1933 IN RELIANCE ON EXEMPTIONS FROM REGISTRATION UNDER SECTIONS 3(b) AND 4(2) THEREOF AND REGULATION D THEREUNDER, AND SAID SECURITIES MAY NOT BE SOLD OR TRANSFERRED UNLESS UNDER AN EFFECTIVE REGISTRATION STATEMENT UNDER SAID ACT OR, IN THE WRITTEN OPINION OF COUNSEL ACCEPTABLE TO THE COMPANY,

EXEMPT FROM THE REGISTRATION PROVISIONS OF SAID ACT.

It is this restriction that the plaintiff seeks to have eliminated from her shares by asking this Court to direct Memory to issue a new certificate without such legend.

The plaintiff held her legended shares continuously for two and one-half years. During that time no one challenged her ownership of or entitlement to the shares. In September, 1985, Rogen orally advised Joseph Greenberger, Esquire, a member of the New York law firm that serves as Memory's outside counsel, of his claim that Ms. Bender was not entitled to her 100,000 shares. The basis for Rogen's claim was that as part of the consideration for the sale of his shares to Bender in March, 1983, Ms. Bender's husband, Perry Scheer, was to perform certain financial services for Memory, but Mr. Scheer did not perform the agreed-upon services.[2] Rogen then asked Mr. Greenberger to write Mr. Scheer a letter asserting Rogen's claim and demanding the return of the 100,000 shares. Mr. Greenberger wrote such a letter on Mr. Rogen's behalf.[3]

Insofar as the record discloses, the Rogen/Greenberger conversation in September, 1985 marked the first time that Rogen ever communicated his claim to anyone. The Rogen claim is vigorously disputed: plaintiff and her husband deny that Mr. Scheer agreed to perform any services for Memory as consideration for plaintiff's 100,000 shares. They contend that the only consideration agreed to was the payment by plaintiff of $1,000 cash to Rogen.

Rogen did nothing further to pursue his claim until February, 1986, when the plaintiff instructed her broker, Bear Stearns & Co., to sell her shares. Because the shares

1. The plaintiff's shares were also not included in the registration of Memory's shares which took place under the April, 1984 Registration Statement.

2. The record does not disclose any contemporaneous documentation of the alleged agreement.

3. Although defendant insists that Mr. Greenberger and his firm were acting as counsel only for Memory, Mr. Greenberger could only have sent the letter to Mr. Scheer on behalf of Rogen in his individual capacity, since Rogen's claim was an individual claim. Accordingly, at least in that context, Mr. Greenberger and his firm were acting as counsel for Rogen personally, and also as counsel for Memory.

were restricted, Bear Stearns advised the plaintiff that they would not execute a sale without an opinion of counsel (as required by the legend on the certificates) that a sale would be exempt under the 1933 Act. On or about February 26, 1986, the plaintiff, through Bear Stearns and her counsel, furnished Memory's counsel with the documentation required by SEC Rule 144, *i.e.*, a Form 144 Notice of Proposed Sale of Securities that disclosed the circumstances of the plaintiff's original purchase of her shares and her intention to sell the shares in the public market. Plaintiff's representatives also requested Memory's counsel to furnish the opinion of counsel required by the legend on her stock certificate.

There then followed a series of telephone conversations and an exchange of correspondence between counsel for Ms. Bender and counsel for Memory. The upshot of these exchanges was that Mr. Greenberger, and later others in his firm, as counsel for Memory, refused to issue the requested opinion and refused to recommend that Memory register any transfer of the plaintiff's shares.[4] Memory's counsel's took the position that because of Rogen's claim that the full consideration for the stock had not been received, they could not opine that the requirements of SEC Rule 144 (a 1933 Act exemption upon which the plaintiff was relying) had been met.[5]

Plaintiff's counsel protested Memory's counsel's position. In response, Memory's counsel invited plaintiff's counsel to render their own opinion to Memory that a transfer of the stock would be exempt under Rule 144. Plaintiff's counsel did so. They furnished to Memory's counsel their opinion that the documentation submitted by Ms. Bender was sufficient to permit a sale of her shares without registration under both Rule 144 and Section 4 of the 1933 Act (15 *U.S.C.* § 77d, irrespective of the merits of the dispute between Rogen and Mr. Scheer.

On March 11, 1986, Rogen filed his New York action against the plaintiff and her husband as the named defendants, charging them with breach of contract and common law fraud and seeking both damages and replevin of the 100,000 shares. The New York action does not appear to have progressed beyond the pleading stage. Mr. Rogen never sought or obtained an injunction in the New York action or in any other action to restrain the transfer of the plaintiff's shares, nor did he seek to obtain a lien on those shares.

On March 13, 1986, the plaintiff's counsel renewed their demand that Memory permit the transfer of the shares. Memory's counsel rejected that demand. On April 3, 1986, plaintiff's counsel supplemented their earlier opinion to incorporate their independent investigation of the facts, on the basis of which they again opined to Memory that the dispute between Messrs. Rogen and Scheer was legally immaterial to Memory's obligation to issue a new, clean certificate to the plaintiff and to register a transfer of

---

**4.** There is evidence that during these negotiations Memory's New York counsel sought to advance Rogen's personal interests. In a letter to Mr. Greenberger dated March 3, 1985, plaintiff's counsel referred to conversations in which Mr. Greenberger told plaintiff's counsel that if Ms. Bender would return a portion of the stock in an amount acceptable to Rogen, Mr. Greenberger's firm might render the necessary opinion (Greenberger Affidavit, Exh. 1). Nowhere in the subsequent correspondence is the reference to those conversations controverted.

**5.** The 1933 Act generally makes it unlawful for any person to sell any security that is not registered unless an exemption from registration is applicable. 15 U.S.C. § 77e(a) and § 77d. Section 4(1) of the Act (15 U.S.C. § 77d(1)) pro-

vides an exemption for sales made by persons other than an "issuer, underwriter or dealer". Because of the Act's broad definition of the term "underwriter", Rule 144 was adopted to provide a "safe harbor" exemption in certain circumstances in which the seller might otherwise be considered to be an "underwriter". Under that Rule, a sale is exempt if it meets all the requirements of Rule 144. One of those requirements is that the full purchase price or other consideration must have been paid or given at least two years prior to the sale. Memory's counsel took the position that since there was a dispute as to whether the full consideration had been paid, plaintiff had not established her compliance with Rule 144.

her shares. Again Memory's counsel took the position that the existence of the Rogen/Scheer dispute created a genuine risk that Memory might be exposed to civil and criminal liability under the 1933 Act, if the shares were permitted to be transferred and if thereafter the Rogen/Scheer dispute were resolved in Rogen's favor. On that basis Memory's counsel again refused to furnish a favorable transfer opinion and took the position that Memory had no obligation to register a transfer of the plaintiff's shares.[6]

## II. *Defendant's Motion To Stay*

■ I first address the defendant's motion to stay. Memory contends that to the extent the Rogen/Scheer dispute is material to a resolution of this action, it would be wasteful to litigate the dispute in Delaware. Memory further argues that by application of the traditional *forum non conveniens* factors governing motions to stay (*see Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967) ), it would serve the orderly and efficient administration of justice for the entire dispute to be resolved in New York.

The short answer is that Memory's motion rests on an incorrect premise. A prior resolution of the Rogen/Scheer contract dispute that is the subject of the New York action is not essential to resolve this action, which is one brought by a stockholder against the corporation to compel the issuance of a stock certificate. The two causes of action are conceptually distinct. As stated in *Kanton v. United States Plastics, Inc.,* 248 F.Supp. 353, 363 (D.N.J. 1965):

"Be that as it may, the issue before this Court, as previously pointed out, is limited to a determination of plaintiff's right to have a transfer of his stock registered on the books of Plastics. Whether or not Scharps [the corporation's president] can establish his claim to that stock as against plaintiff in some other proceeding is another matter, with which this Court is not presently concerned."

Moreover, Memory is not a party to the New York action, and the issue that is central to this lawsuit has not been raised in, and forms no part of, the New York action. Therefore, on the present record it cannot be said that the New York action, even if resolved in plaintiff's favor, would dispose of the dispute presented in this Delaware litigation. For that reason also, a stay of this lawsuit would be improvident. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.,* Del.Ch., 501 A.2d 1239 (1985); *Macfadden Holdings, Inc. v. John Blair & Co.,* Del.Ch., C.A. 8489, Jacobs, V.C. (May 27, 1986), at p. 2 [Available on WESTLAW, DE–CS database].

Finally, even if (contrary to fact) both the New York action and this action did involve the same parties and issues, this Court is in the better position to expeditiously resolve the Delaware law questions presented[7] and to grant the relief requested. The defendant's refusal to issue a clean stock certificate has caused the plaintiff's stock to be indefinitely immobilized and, as a further result, made it vulnerable to the risks of the marketplace. Plaintiff has sought expedited relief from this Court pursuant to 8 *Del.C.* § 158 and 6 *Del.C.* § 8–401. Given the summary character that, as a practical matter, this proceeding has acquired because of those circumstances, the plaintiff is entitled to expect a relatively prompt adjudication of her claim. *See Kirkland v. International Communi-*

---

6. Apparently to buttress its position, Memory, through Rogen, obtained an opinion from Harvard Law School Professor Louis Loss, dated March 18, 1986, stating that if Rogen's version of the dispute were upheld, then no Rule 144 exemption would be available and, therefore, Mr. Greenberger's firm could not issue a favorable transfer opinion, insofar as Federal Securities Law is concerned.

7. Plaintiff seeks relief under § 8–401 of the Uniform Commercial Code and § 158 of the Delaware General Corporation Law. Both claims are governed by Delaware law. 8 *Del.C.* § 169; 6 *Del.C.* § 8–106.

*ty Corporation,* Del.Ch., C.A. 7577, Berger, V.C. (May 29, 1984), at p. 3. This expedited action is now ready for adjudication on its merits. The New York action, by contrast, is not expedited and has not progressed beyond the pleading stage.

Accordingly, the defendant's motion to stay will be denied.

### III. *The Cross-Motions for Summary Judgment*

#### A. *Contentions of the Parties*

Based upon the undisputed facts, the plaintiff contends that she is entitled, by way of summary judgment, to an order directing Memory to reissue to her a new, "clean" certificate evidencing her ownership of 100,000 Memory shares without the restrictive legend imprinted thereon. The plaintiff argues that Memory is under a duty to register the transfer of the plaintiff's shares (and as a predicate thereto, to issue a "clean" certificate) pursuant to § 8–401 of the Delaware Uniform Commercial Code ("UCC") (6 *Del.C.* § 8–401) and § 158 of the Delaware General Corporation Law (8 *Del.C.* § 158).

Section 8–401 of the UCC pertinently provides that:

(1) If a certificated security in registered form is presented to the issuer with a request to register transfer or an instruction is presented to the issuer with a request to register transfer, pledge or release, the issuer shall register the transfer, pledge or release as requested if:

(a) The security is indorsed or the instruction was originated by the appropriate person or persons (Section 8–308);

(b) Reasonable assurance is given that those indorsements or instructions are genuine and effective (Section 8–402);

(c) The issuer has no duty as to adverse claims or has discharged the duty (Section 8–403);

(d) Any applicable law relating to the collection of taxes has been complied with; and

(e) The transfer, pledge or release is in fact rightful or is to a bona fide purchaser.

Section 8–401(1) makes it plain, and the parties do not dispute, that where the statutory conditions in subparagraphs (a) through (e) are satisfied, the issuer has a duty to register a transfer of shares that are presented to the issuer in registered form together with a request to register the transfer. *See, Kanton v. United States Plastics, Inc., supra,* 248 F.Supp. at 362 (applying Florida law); *Kenler v. Canal National Bank,* 489 F.2d 482, 485 (1st Cir.1973) (applying Maine law); *cf., Loretto Literary and Benevolent Institution v. Blue Diamond Coal Co.,* Del.Ch., 444 A.2d 256 (1982). It is also undisputed that in this case only two of the five conditions are contested: condition (c) requiring the issuer must have discharged its duty of inquiry with respect to Rogen's adverse claim and condition (e) requiring that a transfer of the shares be "in fact rightful". The plaintiff argues that both conditions have been satisfied as a matter of both fact and law, and that, therefore, irrespective of the dispute between Messrs. Rogen and Scheer, she is entitled to summary judgment on the merits of her claim.

The defendant insists that the self-same undisputed facts upon which the plaintiff relies entitle it to summary judgment of dismissal. Memory takes the position that it is not obligated to issue a new certificate unless and until the Rogen/Scheer dispute is first resolved in Mr. Scheer's favor in the New York action. Memory advances two basic arguments in support of its position. First, it contends that the UCC does not apply, because UCC § 8–401 applies only to requests to register a transfer of stock, not to requests to issue a new certificate.

Second, it argues that even if UCC § 8–401 is applicable, it does not entitle the plaintiff to the relief she seeks, because if Memory were to permit a transfer by Ms. Bender that did not qualify for a 1933 Act exemption, Memory would be guilty of violating § 5 of the 1933 Act either as a

participant in a non-exempt sale or as an aider and abettor. The defendant contends that no exemption was established here, because if Rogen's claim were to be upheld, then the full consideration for the stock would not have been paid two years before the proposed sale, which would eliminate the availability of a Rule 144 exemption. Memory concludes that since the transfer might violate the 1933 Act and expose it to the risk of liability thereunder, a transfer would therefore not be "rightful" under UCC § 8–401(e). Alternatively, Memory urges if UCC § 8–401 is found to give rise to a duty to register the transfer, then as a result § 8–401 would conflict with § 5 of the 1933 Act (under which such a transfer would be prohibited) and thereby violate the Supremacy Clause of the United States Constitution.

These contentions are now addressed.

### B. The Legal Adequacy of The Plaintiff's Claim for Relief

As previously noted, the defendant first argues that the relief the plaintiff seeks is not available under § 8–401 of the UCC. Since the only duty expressly imposed by § 8–401 is a duty to "register a transfer" of the underlying stock, and since a request to issue a new certificate is not equivalent to a request to register a transfer of the underlying stock, Memory argues that the plaintiff has failed to state a claim upon which relief can be granted.

That argument labors under two burdens. It ignores the fact that the plaintiff also seeks relief under § 158 of the Delaware General Corporation Law (8 Del.C. § 158), apart from the Uniform Commercial Code. Moreover, the argument blissfully disregards the realities of the securities transfer process.

8 Del.C. § 158 expressly entitles every holder of certificated stock " ... to have a certificate ... representing the number of shares registered in certificate form." By necessary implication this includes the right to a proper certificate without a legend or restriction, where such a legend is no longer appropriate. That result is consistent with the common law, which recognizes the existence of a claim for wrongful refusal to issue a stock certificate. See, Reeves v. Transport Data Communications, Inc., Del.Ch., 318 A.2d 147, 150 (1974); Riskin v. National Computer Analysts, Inc., N.Y.Supr., 62 Misc.2d 605, 308 N.Y.S.2d 985 (1970), aff'd, N.Y.App., 37 A.D.2d 952, 326 N.Y.S.2d 419 (1971). On that basis alone—and wholly independent of the UCC—the plaintiff has alleged a valid basis under § 158 for the relief she seeks.

■ In addition, the plaintiff has alleged a cognizable claim for relief under UCC § 8–401. The defendant's argument that the registration of a transfer is not equivalent to the issuance of a new certificate ignores the realities of the securities transfer process. Where certificated stock is transferred, the issuance of a new certificate to the transferee is normally an integral step in that process. And where the stock is restricted, the issuance of a new, clean certificate to the transferor is normally the essential first step. Given those commercial realities, it is reasonable to construe the term "register the transfer", as used in § 8–401 of the UCC, to include those ministerial acts that normally accompany such registration, including, where applicable, the issuance of a new certificate. Nothing in the language or text of Article 8 expressly prohibits that construction, and the only contrary decision touching upon that subject is not persuasive.[8]

---

**8.** The only reported decision holding to the contrary, Steranko v. Inforex, Inc., Mass.App., 5 Mass.App. 253, 362 N.E.2d 222, 236 (1977), aff'd, 8 Mass.App. 523, 395 N.E.2d 1303 (1979) recognized that the removal of the legend is the first step of, and is incident to, the contemplated transfer of the stock, yet the court held, without articulating its reasons, that a removal of the legend is not the equivalent of the registration of a transfer. In my view, Steranko calls for an unduly restrictive reading of § 8–401 and for that reason I decline to follow it. Cf. Kenler v. Canal National Bank, supra, 489 F.2d 482 at 485 (court assumed without deciding that the removal of a restrictive legend would constitute a request to register a transfer under Maine UCC).

For the above reasons, Ms. Bender has alleged a valid statutory basis for her claim. The questions remaining concern the merits of her claim and of Memory's defense.

### C. *The Merits of Plaintiff's Claim and Memory's Defense*

To review briefly the pivotal facts: The restrictive legend on plaintiff's stock certificate provided that the shares could not be sold or transferred, unless the shares were registered under the 1933 Act or, in an opinion of counsel acceptable to the company, were exempt from registration. Since the plaintiff's shares were not registered, an opinion of counsel was required for a transfer to occur. After furnishing relevant documentation, the plaintiff asked Memory's New York counsel to issue the requisite opinion. Memory's counsel refused, for the stated reason that the existence of Rogen's claim to the plaintiff's shares precluded any opinion that the transfer would be exempt under the 1933 Act, because Rogen's claim, if found valid, would negate any exemption under SEC Rule 144. Plaintiff's counsel then tendered their own (later supplemented) written opinion that the transfer would be exempt under Rule 144 and § 4(1) of the 1933 Act. Memory's counsel deemed those opinions not "acceptable to the company", and adhered to their original position. Plaintiff then filed this action, claiming that the defendant had a duty to issue, as preparatory to a transfer, a clean certificate under § 8–401 of the UCC and 8 *Del.C.* § 158.

Memory's defense, simply stated, comes to this: an issuer's duty to register a transfer does not arise unless all of the conditions prescribed by UCC § 8–401 are met. One of those conditions is that "(e) the transfer, pledge or release is *in fact rightful* ..." (emphasis added). A transfer is not "rightful" if it would violate the 1933 Act. *Charter Oak Bank & Trust Co. v. Registrar & Transfer Co., Inc.,* N.J.Super., 141 N.J.Super. 425, 358 A.2d 505 (1976). Defendant argues that unless and until Rogen's adverse claim is resolved in plaintiff's and her husband's favor, the possibility that a transfer would violate the 1933 Act will continue to exist, since Rogen's claim, if valid, would preclude any exemption under Rule 144. Therefore, Memory contends that under § 8–401(e) it had no duty to register the shares.

In response, the plaintiff argues that as a matter of fact and law the requirements of Rule 144 have been met, but even if they were not, the proposed transfer would nonetheless be exempt under § 4(1) of the 1933 Act (15 *U.S.C.* § 77d(1)) which exempts "transaction[s] by any person other than an issuer, underwriter, or dealer". See page 6, fn. 5, *supra.* Plaintiff contends that irrespective of the merits of Rogen's claim, the evidence of record and the opinion of plaintiff's counsel furnished to Memory clearly established that a transfer would be exempt under § 4(1) of the 1933 Act. Accordingly, she claims that the transaction is clearly "rightful" and that the defendant's refusal to remove the legend and to register the transfer was unreasonable as a matter of law.

■ For the reasons now discussed, the plaintiff's arguments are meritorious and she is entitled to the relief she seeks. I so conclude for two separate reasons.

*First,* the transfer would be "rightful" under § 8–401(e) because, apart from Rule 144, the undisputed facts establish that the proposed transfer would be exempt under § 4(1) of the 1933 Act. Defendant makes no claim, nor is there any evidence, that plaintiff is an "issuer" or "dealer". Nor is there evidence that plaintiff would be acting as an "underwriter" as that term is defined in § 2(11) of the 1933 Act (15 *U.S.C.* § 77b(11)). Defendant's sole argument on this point consists of an unsupported assertion (made in a footnote) that if Rogen's claim is valid, then any sale of Ms. Bender's stock would be for the account of Rogen, a "controlling person" of Memory, and that, as a consequence, Ms. Bender would be a statutory "underwriter". That argument is unsupported in fact and law. In fact, Ms. Bender intends to sell for her

own account and, at the time of the transfer any sale will be for her account. In law, Mr. Rogen would (if his claim is valid) have a claim for damages. But Memory has cited no authority for its apparent proposition that the later validation of Rogen's damage claim would retroactively convert the prior stock transfer into a sale for Rogen's account for 1933 Act purposes. Because no showing is made that Ms. Bender would be selling her shares as a dealer, issuer, or underwriter, as those terms are used in the 1933 Act, the proposed transfer would be exempt under § 4(1) of the 1933 Act. Therefore the transfer would be "in fact rightful" under § 8–401(e) of the UCC.[9]

*Second,* it is manifest from the record that no valid issue existed as to the "rightfulness" of the proposed transfer under UCC § 8–401(e). What the defendant has attempted to do is to contrive an issue of "rightfulness" under § 8–401(e), not in order to protect legitimate interests of its own, but to further the individual interests of its Chief Executive Officer and largest stockholder, Rogen. To paraphrase *Kanton v. United States Plastics, Inc., supra,* 248 F.Supp. at 358, 363, I am satisfied that the corporate entity, Memory, is being used by Rogen to defeat a transfer of stock in which it has no interest, and that Memory's refusal to make the requested transfer of plaintiff's stock is not motivated by any reasonable fear of liability under the Securities Act of 1933, but, rather, to accommodate Rogen's wishes. Memory's conduct permits no other reasonable inference.

Where, as here, an adverse claim is made, the issuer corporation is privileged for a reasonable period of time to refuse to register a transfer of the stock that is the subject of the adverse claim. *Kanton v. United States Plastics, Inc., supra,* 248 F.Supp. at 362–3. This is to enable the issuer to discharge its duty to inquire into the adverse claim. Section 8–403 autho-

rizes the corporate issuer to discharge that duty by any reasonable means. Section 8–403 then goes on explicitly to provide that "reasonable means" include notifying the adverse claimant by registered or certified mail that the security has been presented for registration and that the transfer will be registered, unless within 30 days of the mailing of notification (i) either an appropriate restraining order issues from a court of competent jurisdiction or (ii) an indemnity bond is furnished to the issuer sufficient in amount to protect the issuer from any loss or damage it may sustain by reason of compliance with the adverse claim. After the issuer's duty of inquiry is discharged, and assuming compliance with the other requirements of § 8–401, it then becomes mandatory under § 8–401 for the issuer to register the transfer. *Kanton v. United States Plastics, Inc., supra,* 248 F.Supp. at 361.

The foregoing makes it apparent that the UCC-envisioned role of an issuer confronted with an adverse claim is one of neutrality between the claimants. In § 8–403 the UCC has provided a means whereby the corporate issuer can stay out of the claimants' dispute, and perform the essentially ministerial act of transferring the shares irrespective of that dispute, unless within the prescribed 30 day period the adverse claimant obtains an injunction against the transfer or furnishes an appropriate indemnity bond to the issuer. Such a neutral posture is consistent with the fiduciary position that the corporation occupies with respect to the presenting shareholder. It is also consistent with the policy underlying Article 8 of the UCC, which is to expedite transfers and confer full negotiability upon all investment securities. *See* Folk, "Article Eight: A Promise and Three Problems", 65 Mich.L.Rev. 1379, 1409–1410 (1967) (hereinafter "Folk").

As previously indicated, UCC § 8–403 does not prescribe the 30 day notice proce-

---

**9.** Since a transfer would be exempt, Memory has no defense to plaintiff's claim to compel the issuance of a stock certificate without the restrictive legend under 8 *Del.C.* § 158. Accordingly, she is entitled to relief under § 158 as well as under UCC § 8–401.

dure as the exclusive method of discharging the issuer's duty of inquiry into an adverse claim. However, any different course of action the issuer may decide to employ is necessarily circumscribed both by the issuer's general duty to act in good faith (Folk, at pp. 1409–1410, UCC § 1–201(19)) and by the risk that it could be held liable for an unreasonable delay, or for wrongful failure, to register the transfer (UCC § 8–401(2)). Thus, although Memory was statutorily entitled to inquire into Rogen's adverse claim by means other than requiring him to obtain an injunction or to furnish a bond, Memory was not free to abandon its posture of neutrality and to assume the role of a judge (who decides which of the contending claimants' positions is valid) or of an investigating prosecutor (who seeks to develop evidence to support the position of one of the two adverse claimants). Unfortunately, that is precisely what Memory was caused to do here.

When Ms. Bender presented her shares to Memory to register the transfer, Memory was on notice of Rogen's adverse claim. At that point (to repeat) all Memory need have done was notify Rogen that the transfer would be registered unless Rogen obtained an appropriate injunction or furnished Memory with an appropriate indemnity bond. UCC § 8–403. There is no evidence that such notification was given. If it was, then thirty days thereafter Memory would have been statutorily obliged to register the transfer, since Rogen never ob-

tained an injunction or furnished the requisite bond.

Rather than do what the Code prescribed, the corporate issuer engaged in a course of conduct which defendant attempts to portray as a "reasonable investigation", but which in fact has the appearance of a search for evidence to justify its having taken a partisan position favorable to Rogen. The defendant's attorneys proceeded to interview witnesses presumably supportive of Rogen's side of the dispute, and to furnish and obtain legal opinions that if Rogen's claim were valid, then the transfer would not be exempt under SEC Rule 144.[10]

Had Memory been allowed to function as a neutral, disinterested issuer as envisioned by the UCC, Memory would not have taken a partisan position favorable to Rogen, nor would it have needed to develop evidence supportive of its refusal to register the transfer. For clearly the evidence contained in Memory's own records, together with the evidence and opinion furnished by the plaintiff's counsel, established the availability of the exemption under § 4(1) of the 1933 Act, irrespective of the merits of the dispute between Messrs. Rogen and Scheer.[11] Memory and its attorneys chose to treat that evidence as if it did not exist, and then proceeded to build a case founded upon the inapplicability of Rule 144, an issue which, given the § 4(1) exemption, was a red herring.

Finally, it is no answer for the defendant to argue that such a result would be incon-

---

**10.** Professor Loss's opinion discusses only the availability of a Rule 144 exemption, but does not purport to address the availability of a § 4(1) exemption which I have found is applicable in this case. Nor does the record indicate that Professor Loss was ever asked to opine with respect to § 4(1).

**11.** That fact alone distinguishes this case unequivocally from the authorities relied upon by Memory. In the latter cases it was certain from undisputed facts known to the corporate issuer at the time the transfer was requested that the transfer would be in violation of the 1933 Act. In *Charter Oak Bank & Trust Co. v. Registrar & Transfer Co. Inc., supra,* 358 A.2d 505, the court

held that a transfer of shares by the owner of 19% of issuer's stock that would render the transferor a statutory "underwriter", and thereby eliminate a § 4(1) exemption, made the transfer not "rightful" under UCC § 8–401(e). In *Kenler v. Canal National Bank,* 489 F.2d 482 (1st Cir.1973) an attempt by a shareholder to transfer securities without supplying the opinion of counsel required by the legend on the certificate was held not rightful. In this case it was clear, because of the availability of a § 4(1) exemption, that the proposed transfer of Ms. Bender's shares would not violate § 5 of the 1933 Act.

sistent with the 1933 Act and would violate the Supremacy Clause. On this record, the argument has no factual or legal foundation. Factually, at the time of the transfer there would be no 1933 Act violation. Legally, even if it is assumed, *arguendo,* that the transfer were later found to have violated the 1933 Act, Memory could not be found criminally liable unless its conduct were "willful" (15 *U.S.C.* § 77x), and it could not be found civilly liable unless it knowingly and substantially participated in the underlying violation and its culpability involved conduct other than negligence. *Monsen v. Consolidated Dressed Beef Company, Inc.,* 579 F.2d 793, 799 (3d Cir.), *cert. denied sub nom, First Pennsylvania Bank N.A. v. Monsen,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Where, as here, the issuer is acting mainly as a conduit for the transfer of the shares without participating in the sale, there is no basis for finding it civilly liable to the purchaser under Section 12 of the 1933 Act. *Riskin v. National Computer Analysts, Inc., supra,* 308 N.Y.S.2d at 988. Moreover, where the transfer has been registered on the basis of a sworn statement of the record stockholder and of an opinion of counsel,[12] the adverse claimant has not attempted to implement his claim with an injunction, and the corporation relies in good faith upon such documentation, it strains credulity to argue that the corporation's act in registering the transfer would constitute a knowing or willful participation in the underlying Securities Act violation. *See also, Kanton v. United States Plastics, Inc., supra.* The defendant's Supremacy Clause argument is without merit.

\* \* \*

For the foregoing reasons, the defendant's motions to stay and for summary judgment are denied, and the plaintiff's motion for summary judgment is granted.

IT IS SO ORDERED.

12. A presenting stockholder's counsel who is prepared to opine that a transfer would not violate the 1933 Act, assumes the risk of liability if the opinion is negligently rendered. For that reason, and also because of counsel's greater familiarity with the pertinent facts, the issuer's reliance upon an opinion of counsel is normally regarded as reasonable. *See Kenler v. Canal National Bank, supra,* 489 F.2d at 487.