**Barbara MERKENS, Plaintiff,**

v.

**COMPUTER CONCEPTS CORP. et al., Defendants.**

**No. 95CV1134 (TCP) VVP.**

United States District Court,
E.D. New York.

Nov. 8, 1999.

Robert M. Axelrod, Meriden, CT, Joseph P. Zammit, Fulbright & Jaworski, L.L.P., New York, NY, for Plaintiff.

Ralph A. Hummel, Fine Hummel, Huntington, NY, for defendants.

**MEMORANDUM AND ORDER**

PLATT, District Judge.

Both parties move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, plaintiff's Motion is denied and Defendants' Motion is granted.

**BACKGROUND**

This is a diversity action under Article 8 of the Delaware Uniform Commercial Code and New York law to determine the ownership of 10,000,000 shares of common stock in defendant corporation Computer Concepts Corp. ("CCC"). Newly-replaced plaintiff Barbara Merkens ("Merkens"),[1] is an investor and resident of Schwalbach, in Germany. At times relevant to this case she was engaged in the investment business on behalf of herself and other German citizens. CCC is a publicly-traded Delaware corporation with its principal place of business in Bohemia, New York. Daniel DelGiorno, Sr. is CCC's chief executive officer and a CCC director; Daniel DelGiorno, Jr. is CCC's president and also a director; and Russell Pellicano is both a director and officer in CCC. Both DelGiornos and Pellicano reside in the Eastern District.

In June 1994, pursuant to an investment agreement containing a guaranteed return of capital, Merkens agreed to lend $12,-000,000 to T & M Consulting Corp., A.G. ("T & M"), a Swiss company and a nonparty in this case. The money was to be committed to an undisclosed but "highly

---

1. Plaintiff Barbara Merkens ("Merkens") requested an order substituting Ulrich Maschmann ("Maschmann"), her Bankruptcy Estate's Trustee, as plaintiff. The Court granted the application as unopposed.

profitable" investment that would yield a 100% return within two weeks. Merkens apparently made the decision to invest on the basis of an earlier, successful deal with T & M which involved a similar return and time frame, but an investment of only $500,000.

As security for her investment in the new deal, Merkens accepted from T & M 10,000,000 shares of common stock in CCC, believing them to be worth $15,000,-000. She obtained the stock as follows: CCC had originally given the share certificates to Aval Guarantee Ltd. ("Aval"), an Irish limited liability company (and a nonparty to this case following amendment of the Complaint), pursuant to a Regulation S stock subscription agreement between CCC and Aval ("the Aval Agreement"). The certificates bear the legend "fully-paid and non-assessable shares of the common stock of ... Computer Concepts Corp." (Def.'s Notice of Motion, Exh. B.)

Pursuant to the Aval Agreement, a receipt for the shares provided that they were to be held "in trust" by Aval until it made an initial payment of an amount equivalent to 40% of the market price of the shares at closing on September 8, 1994. The Aval Agreement also gave CCC the right to cancel the shares and pursue other remedies should Aval fail to make payment. On November 4, 1993, Aval's director of finance, Walter Mennel ("Mennel"), took possession of the shares on behalf of Aval, signing the receipt described above. (Defs.' Second Supp.R. 56.1 Stmt.Exh. A.) A dispute then ensued between Aval and CCC as to the value of the securities and the appropriate amount for the initial payment, during which Aval neither paid for the shares nor returned them to CCC.

Maschmann alleges that T & M presented Merkens with the same shares as security for her investment. Neither party's papers explain how T & M obtained the power to dispose of the shares. The certificates were indorsed in blank, purportedly by Mennel, and notarized in Switzerland. Subsequent to Merkens' receipt of the shares, both T & M and Mennel tried to obtain the return of the shares by various promises of substitution, but Merkens refused to relinquish them. T & M then defaulted on the loan, Mennel absconded (and still cannot be located), and in October 1994 Merkens requested that CCC register her ownership of the shares on its books. CCC refused to register the transfer to Merkens, stating that the shares were to be canceled, and in June 1995 CCC's transfer agent registered the shares as canceled.

After making due demand to CCC to transfer ownership of the shares to her in August 1995, Merkens brought the instant suit in November 1995. In a Second Amended Complaint, Maschmann contends that Merkens is a bona fide purchaser of the shares for value and is entitled to their transfer of record. He further asserts that Merkens is entitled to the difference between the (higher) value of the shares in August 1994 and their present value plus interest, a reasonable rate of return which she would otherwise have received for her investment, punitive damages, and costs. Presently, both Maschmann and the defendants move for summary judgment on the issue of whether CCC has a duty to register Merkens as the owner of the shares.

## DISCUSSION

By his Motion, Maschmann seeks a declaratory judgment that CCC has a duty to register a transfer of the above shares to Merkens from Aval on grounds that she is the legitimate transferee of the shares. Defendants argue that they should receive summary judgment on the same issue chiefly because Merkens did not fulfill the relevant statutory prerequisites to transfer. While troubled by the abstract nature of this debate, which bears little relationship to the almost farcical circumstances which brought the parties to this pass, the Court holds that CCC may demand a signature guarantee, without which it has no duty to register the transfer of the shares

to Merkens. Accordingly, the Court does not address the issues presented by the other statutory prerequisites.

## A. Summary Judgment

A court will·grant a motion for summary judgment if the pleadings, affidavits and admissions show that there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant bears the initial burden of demonstrating that the facts adduced fail to establish the existence of an essential element to that party's case. *Id.* at 322–23, 106 S.Ct. 2548. If the movant successfully carries this burden, then the non-moving party must establish that a "rational trier of fact [could] find for the non-moving party [or] that there is a genuine issue for trial." *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989), quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). On summary judgment the inferences to be drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–9, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## B. Duty to Register Transfer

Because CCC incorporated in Delaware, that State's laws govern CCC's duties as an issuer of stock. DEL.CODE ANN. tit. 6, § 8–106 (1995). As to the duty to register the transfer of securities, Delaware law provides in relevant part as follows.

§ 8401 Duty of issuer to register transfer, pledge or release.

(1) If a certificated security in registered form is presented to the issuer with a request to register transfer or an instruction is presented to the issuer with a request to register transfer, pledge or release, the issuer shall register the transfer, pledge or release as requested if:

(a) The security is indorsed or the instruction was originated by the appropriate person or persons (Section 8–308);

(b) Reasonable assurance is given that those indorsements or instructions are genuine and effective (Section 8–402);

(c) The issuer has no duty as to adverse claims or has discharged the duty (Section 8–403);

(d) Any applicable law relating to the collection of taxes has been complied with; and

(e) The transfer, pledge or release is in fact rightful or is to a bona fide purchaser.

DEL.CODE ANN. tit. 6, § 8–401(1) (1995). In connection with subsection (1)(b), "reasonable assurances of genuineness" include the following:

(1) The issuer may require the following assurance that each necessary indorsement of a certificated security ... is genuine and effective:

(a) In all cases, a guarantee of the signature ... of the person indorsing a certificated security or originating an instruction including, in the case of an instruction, a warranty of the taxpayer identification number or, in the absence thereof, other reasonable assurance of identity;

. . .

(2) A "guarantee of the signature" in subsection (1) means a guarantee signed by or on behalf of a person reasonably believed by the issuer to be responsible. The issuer may adopt standards with respect to responsibility if they are not manifestly unreasonable.

. . .

(4) The issuer may elect to require reasonable assurance beyond that specified in this section, but if it does so and,

for a purpose other than that specified in subsection (3)(b), both requires and obtains a copy of a will, trust, indenture, articles of copartnership, bylaws or other controlling instrument, it is charged with notice of all matters contained therein affecting the transfer, pledge or release.

DEL.CODE ANN. tit. 6, § 8–402 (1995).

CCC has no duty to register transfer in this case because it may exercise its right to require a guarantee of signature. Section 8–402(1)(b) requires that reasonable assurance be given that a signature is genuine and effective. As to reasonable assurances, "[t]he issuer may require the following assurance that each necessary indorsement of a certificated security ... is genuine and effective:

(a) *In all cases,* a guarantee of the signature ... of the person indorsing a certificated security...." DEL.CODE ANN. tit. 6, § 8–402(1)(a) (emphasis added). The guarantee "means a guarantee signed by or on behalf of a person reasonably believed by the issuer to be responsible. The issuer may adopt standards with respect to responsibility if they are not manifestly unreasonable." DEL.CODE ANN. tit. 6, § 8–402(2).

Maschmann argues first that the signatures must be deemed admitted pursuant to § 8–105(3) because CCC was familiar with Mennel from its dealings under the Aval Agreement. This argument fails because, as CCC points out, § 8–105(3) does not apply to this case. The section provides that

(3) In any action on a security:

(a) Unless specifically denied in the pleadings, each signature on a certificated security, in a necessary indorsement, or an initial transaction statement, or on an instruction, is admitted....

DEL.CODE ANN. tit. 6, § 8–105(3)(a) (1995). The Official Comment to the U.C.C.[2] defines "action on a security" as "any action or proceeding brought against the issuer to enforce a right or interest that is part of the security—e.g., to collect principal or interest or a dividend, or to establish a right to vote or to receive a new security under an exchange offer or plan of reorganization." N.Y.U.C.C. § 8–105 (McKinney 1990). The Court agrees with the defendant that the dispute over ownership of a security is distinct from an action where an undisputed owner seeks to exercise rights allegedly granted by the security. *Broadcort Capital Corp. v. Summa Med. Corp.,* 972 F.2d 1183 (10th Cir.1992) does not alter the Court's conclusion—no language in that case mentions § 8–105(3) or defines "action on a security."

Maschmann also argues that no reasonable assurance of the signature's authenticity is needed because CCC was familiar with Mennel and because the requirement of a bond against the signature's falsity would be inequitable in this case given CCC's familiarity with Mennel and Merkens' inability to procure a bond because of her insolvency. They cite the case of *Bender v. Memory Metals, Inc.,* 514 A.2d 1109 (Del.Ch.1986) for the proposition that a party may not employ "procedural subterfuges" to avoid the duty to transfer. Despite the appeal of this argument. and ruling, *Bender* does not alter the Court's conclusion.

In *Bender,* the CEO of Memory Metals, one Rogen, sold 100,000 shares in the company to Bender for disputed consideration. Bender maintained that the sole consideration was $1,000, while the CEO maintained that Bender's husband Scheer was in addition to perform financial work for Memory Metals, which Scheer did not do.

**2.** The Court notes that the Official Comments were not adopted by Delaware, but finds permissible their use in interpreting the UCC. *See In the Matter of Copeland,* 531 F.2d 1195, 1203 n. 4 (3d Cir.1976) ("While Delaware has not adopted the Official Comments prepared by the drafters of the Uniform Commercial Code, these comments are nevertheless useful in interpreting the Code, as it is to be applied in Delaware, in view of the Code's expressed purpose of making uniform the law among the various jurisdictions.").

The share certificates bore a legend identifying them as the subject of an unregistered transaction, and limiting their negotiability to cases where they were sold under an effective registration statement or exempted from the registration provisions of the Securities Act of 1933 by an opinion from counsel "acceptable" to Memory Metals.

Bender sought to sell the shares, but Memory Metals refused to provide an opinion that the transfer was exempt under the 1933 Act. Bender sued Memory Metals and moved for summary judgment, claiming that it was under a duty pursuant to § 8–401 to register the transfer she sought to make. Registration of such a transfer would have entailed the issuance of new certificates without the restrictive legend. Memory Metals argued that the transfer was not "rightful" under § 8–401(1)(e) because it was not exempt under the 1933 Act given the disputed nature of the original transfer to Bender.

The court granted summary judgment in favor of Bender on the rationale that the transfer was exempt under the 1933 Act under the undisputed facts, and because there was "no valid issue" as to whether the transfer was rightful. The court held that

> what the defendant has attempted to do is to contrive an issue of "rightfulness" under UCC § 8–401(e), not in order to protect legitimate interests of its own, but to further the individual interests of its Chief Executive Officer and largest stockholder, Rogen.... I am satisfied that [Memory Metals] is being used by Rogen to defeat a transfer of stock in which it has no interest, and that Memory's refusal to make the requested transfer of plaintiff's stock is not motivated by any reasonable fear of liability under the Securities Act of 1933, but, rather, to accommodate [the CEO's] wishes. Memory's conduct permits no other reasonable inference.

*Bender*, 514 A.2d at 1117 (citation omitted). The Court then discussed Memory Metals' obligation to require as fiduciary into adverse claims, stating that its conduct was "necessarily circumscribed ... by the issuer's general duty to act in good faith...." *Id.* at 1118.

This case is analogous to *Bender* in that it concerns a dispute between the possessor of the shares, who seeks to have a transfer registered. The issuer raises a defense—here the signature guarantee (as well as an adverse claim, discussed *infra*)—and the possessor contends that the defense is raised in bad faith: not to avoid the liability contemplated by the statute, i.e. registering a transfer under a counterfeit endorsement, but to avoid the loss of the shares and "liability ... for failing to obtain a valid issuer's lien." (Pl.'s Mem. in Supp. at 12.)

This Court declines to apply *Bender* for the following reasons. First, on closer examination of the facts at bar, the analogy fails. Where in *Bender* the court was certain that the defense of a non-"rightful" transfer was entirely specious, the facts before this Court regarding the transactions which left the certificates with Merkens are almost entirely obscure. CCC contests the validity of the signature, stating at oral argument that it did not concede that "the same Mennel" signed both the Aval Agreement and endorsed the certificates. (Tr. of 4/23/99 Oral Arg. at 26 ln. 20. (hereinafter "Tr.").) Neither party explains how the shares were given to T & M; nor is it explained whether T & M ever actually had legal possession of the shares. Nor is it shown that Mennel had the authority to act for Aval in indorsing the shares, if he did. Nor is it clear how Merkens, who did almost nothing to ensure the negotiability of the shares—in the context of a deal which positively reeks of the "back alley" sale—can now claim either that CCC is certain of the signature's validity, or that it is "inequitable" for CCC to require a bond given Merkens' bankruptcy.

Moreover, failing to enforce the provision on these grounds would mean contravening the statute's plain language: "in all cases" a signature guarantee may be required. DEL.CODE ANN. tit. 6, § 8–402(1)(a). Maschmann concedes that such an interpretation of the statute would be a novel one. (Tr. at 12, ln. 20.) The Court is not inclined to interpret the statute in this fashion because it is not clear what test should replace the phrase "in all cases." Maschmann appears to propose that where an issuer has admitted the validity of a signature, and the claimant can prove that the issuer does not disbelieve the signature, the guarantee should not be required. (*See generally* Tr. at 14–19.) First, the Court notes that the statute does not suggest any intention that such a test be employed. Second, CCC has not conceded the signature's validity notwithstanding § 8–105(3), and it is far from clear on the facts before the Court that Mennel either signed the certificates or signed with Aval's authority. Finally, to interpret the statute in this way would render the guarantee system alluded to by CCC problematic and subject to an uncertainty and inefficiency with potentially paralytic effect on transferability. Accordingly the Court declines Maschmann's invitation and holds that CCC may demand a signature guarantee in this case, without receipt of which it has no duty to register the transfer to Merkens.[3]

## CONCLUSION

CCC may in all cases exercise its right to require a guarantee of signature, which constitutes a statutory prerequisite to the duty to register the transfer. Without this guarantee, Merkens does not meet the statutory conditions for a duty. Accordingly, summary judgment on the issue of duty to register transfer is hereby granted to CCC.

SO ORDERED.

---

**3.** It would appear that the issue of whether § 8–103 applies, while mooted by the above holding, is not susceptible of resolution on summary judgment because material issues of fact exist as to whether CCC intended to retain an issuer's lien. Moreover, assuming *arguendo* that CCC possessed an adverse claim and not an abortive issuer's lien, given the facts of this case material issues of fact would appear to exist concerning the question of whether Merkens is entitled to *bona fide* purchaser status. *See, e.g., Matthysse v. Secs. Processing Servs., Inc.,* 444 F.Supp. 1009, 1021 (S.D.N.Y.1977) ("[whether purchaser acted in good faith and without notice of a claimed interest in contested bonds] is a question of fact to be answered upon consideration of all the circumstances of the transaction" (citations omitted)). As stated above, the Court is far from satisfied that it has before it "all the circumstances of the transaction."