AMERICAN SECURITIES TRANSFER, INCORPORATED, Plaintiff,

v.

PANTHEON INDUSTRIES, INC., a Colorado corporation; A.R.G.I., Incorp., an Arizona corporation; and Princeton American Corporation, an Arizona corporation, Defendants.

Civ. A. No. 93–B–1432.

United States District Court, D. Colorado.

Dec. 2, 1994.

Patrick J. Russell, Denver, CO, for plaintiff.

Richard S. Strauss, Hochstadt, Straw & Stauss, P.C., Denver, CO, for defendants A.R.G.I. and Princeton American.

Miles M. Gersh, James S. Helfrich, Gersh & Danielson, Denver, CO, for defendant Pantheon Industries.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff American Securities Transfer, Incorporated (AST) filed this interpleader action to determine the ownership to stock certificate no. 2770 (the certificate), issued to defendant A.R.G.I., Incorporated (A.R.G.I.) and representing 2,000,000 shares of Pantheon Industries, Inc. (Pantheon) common stock when issued. AST asserts no interest in the certificate. A.R.G.I. and Princeton American Corporation (Princeton) (collectively A & P) bring one counterclaim against AST alleging that AST violated § 4–8–401, 2 C.R.S. (1992) and, thus, they are entitled to damages. A & P also assert this claim against Pantheon. In addition, they assert cross-claims against Pantheon for breach of contract, state and federal securities fraud, and exemplary damages. Similarly, Pantheon asserts cross-claims against A.R.G.I. for federal securities fraud, common law fraud, and lack of standing. It also brings a claim against Princeton for violation of Rule 144 of the Securities and Exchange Commission.

AST and Pantheon move for summary judgment on A & P's claim that they violated § 4–8–401. A & P cross-move for partial summary judgment against AST and Pantheon on this same claim. Pantheon also moves for partial summary judgment seeking a declaration that it is the rightful claimant to the stock certificate at issue. These motions are briefed fully and oral argument is unnecessary. For all the reasons set forth below, AST's and Pantheon's motions will be granted to the extent of Princeton's § 4–8–401 claim. Because genuine issues of material fact otherwise exist, the remaining motions will be denied.

### I.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e).

### II.

The following facts are undisputed. AST and Pantheon are corporations organized and existing under the laws of the State of Colorado. Scheduling Order, "Undisputed Facts" (the Order), ¶ 1. AST is Pantheon's stock transfer agent. Order, ¶ 2. In February 1990, Pantheon and Minco American Corpo-

ration (Minco) discussed a potential merger of their companies. Order, ¶ 3. Dale Eyman (Eyman) and David Smith (Smith), as Minco's officers and directors, were primarily responsible for the merger negotiations. *Id.* At this time, Pantheon owed its auditors, Toback & Co. (Toback) approximately $55,-000. *Id.* at ¶ 4.

AST issued the certificate to A.R.G.I. on March 12, 1990 pursuant to instructions received from Pantheon. Affidavit of Kellie D. Watson, AST's senior vice president (Watson affid.), ¶¶ 3 and 4. This certificate contains a restrictive legend which reads:

The shares represented by this Certificate have not been registered under the Securities Act of 1933 (the Act) and are "restricted securities" as that term is defined in Rule 144 under the Act. The shares may not be offered for sale, sold or otherwise transferred except pursuant to an effective registration statement under the Act or pursuant to an exemption from registration under the Act, the availability of which is to be established to the satisfaction of the Company.

A.R.G.I.'s and Princeton's Cross–Motion (A & P motion), exh. A. The certificate also states on its face that the shares of common stock are "fully paid and nonassessable". *Id.* Several days earlier, Eyman, on behalf of A.R.G.I., executed an investment letter acknowledging the restrictive legend. AST's exh. A. Eyman is and was A.R.G.I.'s sole officer and director. Deposition of Dale Edward Eyman, Jr. (Dep. Eyman), p. 108. On February 28, 1990, A.R.G.I. issued a $40,000 promissory note (the A.R.G.I. note) to the order of Pantheon's wholly-owned subsidiary, Pantheon Studios, Inc. (Pantheon Studios). The A.R.G.I. note is also signed by Dale Eyman, on behalf of A.R.G.I. Pantheon's exh. E. A.R.G.I. has made no payments on its note. Pantheon's exh. O—A.R.G.I.'s answer to interrogatory No. 4.

Notwithstanding the certificate's restrictive legend, A.R.G.I. purportedly assigned and transferred the certificate to Minco on February 28, 1991. Pantheon's exh. T. Approximately two months later, Minco sold its assets to Princeton. Pantheon's exh. U. Smith and Eyman are also officers and directors of Princeton. Dep. Eyman, pp. 109–10.

In a letter dated August 18, 1992, Pantheon advised AST that the certificate was issued in error and instructed AST to cancel it. Order, ¶ 8; Pantheon's exh. X. In response, AST advised Pantheon that it was unable to cancel the certificate but would place a stop transfer order against it. Pantheon's exh. Y and Watson affid., ¶ 6. Enclosed in a May 11, 1993 letter, A.R.G.I. submitted the certificate to AST and requested that a new stock certificate be issued to A.R.G.I. without the restrictive legend (the reissuance request). Pantheon's exh. Z. In a May 19, 1993 letter, AST notified Pantheon of A.R.G.I.'s request and informed it that the transfer would be completed unless AST received, within thirty days, a court order precluding the transfer or an indemnity bond protecting AST against any loss. Order, ¶ 14; Watson affid., ¶ 9 and attached exh. F. On May 21, 1993, Pantheon responded by phone and in writing instructing AST not to transfer the shares. Order, ¶ 15; Watson affid., ¶¶ 9 and 10. AST then advised A.R.G.I. of Pantheon's position and transmitted via facsimile the pertinent documents. Watson affid., ¶ 13. Watson told A.R.G.I. to obtain a legal opinion which addresses all points raised in Pantheon's letter. *Id.* and attached exh. H. On June 15, 1993, Watson received a letter via facsimile from T. Michael Daggett (Daggett), A.R.G.I.'s attorney. *Id.* at ¶ 14 and attached exh. I. This letter along with Pantheon's instructions were forwarded to AST's legal counsel. *Id.* at ¶ 15. AST received neither a court order precluding A.R.G.I.'s reissuance request nor a surety bond. *Id.* at ¶ 16. Nevertheless, AST did not proceed with the reissuance request. *Id.* Instead, AST brought this interpleader action.

### III.

#### A.

The first question raised is whether AST breached its duties under Article 8 of the Uniform Commercial Code. Because the issuer, Pantheon, is a Colorado corporation, Colorado law governs. § 4–8–106, 2 C.R.S. (1992). Under C.R.S. § 4–8–401(1), an issuer

has a duty to register the transfer of securities as requested if certain preconditions are met. *Dempsey–Tegeler & Co. v. Otis Oil & Gas Corp.,* 293 F.Supp. 1383, 1385 (D.Colo. 1968). Section 4–8–401 provides in relevant part:

Duty of issuer to register transfer ...

(1) If a certified security in registered form is presented to the issuer with a request to register transfer or an instruction is presented to the issuer with a request to register transfer ... the issuer shall register the transfer ... as requested if:

(a) The security is indorsed or the instruction was originated by the appropriate person ...; and

(b) Reasonable assurance is given that those indorsements or instructions are genuine and effective ...; and

(c) The issuer has no duty as to adverse claims or has discharged the duty (section 4–8–403); and

(d) Any applicable law relating to the collection of taxes has been complied with; and

(e) The transfer ... is in fact rightful or is to a bona fide purchaser.

(2) If an issuer is under a duty to register a transfer ... of a security, the issuer is also liable to the person presenting a certificated security or an instruction for registration or his principal for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer ...

Official comment 3 states that "[i]f any of the preconditions do not exist, there is no duty to register the transfer." Pursuant to § 4–8–406, a coextensive duty is imposed upon a transfer agent to register a transfer request. The provisions of §§ 401 and 406 apply to the request to reissue the certificate here as this is a predicate for transfer of the certificate. *Bender v. Memory Metals, Inc.,* 514 A.2d 1109, 1115 (Del.Ch.1986); *Kenler v. Canal Nat. Bank,* 489 F.2d 482, 485 (1st Cir.1973).

The parties address two of the above conditions in their motions—§§ 401(1)(c) and (e). A & P argues that Pantheon's August 18, 1992 letter did not give rise to an "adverse claim" upon which AST had a duty to inquire under § 401(1)(c). However, they concede, and I agree, that AST's May 19th letter to Pantheon discharged its duty of inquiry.

The issuer [transfer agent] may discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by ... mail ... that the transfer will be registered unless within thirty days from the date of mailing the notification, either: a) [a]n appropriate restraining order, injunction, or other process issues from a court of competent jurisdiction; or (b) [a]n indemnity bond ... to protect ... any transfer agent ... is filed ...

§ 4–8–403(2). Having satisfied § 4–8–401(1)(c), AST's and A & P's motions turn on § 8–401(1)(e) which requires that the requested transfer be "in fact rightful or ... to a bona fide purchaser".

■ AST argues that on the undisputed facts, as a matter of law, it is immune from liability because it never received an adequate opinion of counsel from A.R.G.I. concerning the rightfulness of the· transfer in view of Pantheon's representation that under Rule 144, the restrictive legend could not be removed. I disagree.

It is undisputed that the certificate contains a restrictive legend which states that the shares may not be transferred "except pursuant to an effective registration statement under the Act or pursuant to an exemption from registration under the Act, the availability of which is to be established to the satisfaction of the Company". Rule 144 of the Securities and Exchange Commission (Rule 144), 17 C.F.R. § 230.144, requires that restricted securities be held a minimum of 2 years before being sold and this 2–year holding period does not begin "until the full purchase price or other consideration is paid ..." 17 C.F.R. § 230.144(d). When a promissory note is given as consideration, Rule 144 provides in relevant part:

... Giving the issuer or affiliate of the issuer from whom the securities were purchased a promissory note ... to pay the purchase price ... shall not be deemed full payment of the purchase price unless the promissory note ...:

(i) provides for full recourse against the purchaser of the securities;

(ii) is secured by collateral ...; and

(iii) shall have been discharged by payment in full prior to the sale of the securities.

While certain Rule 144 requirements are eliminated if the restricted securities have been held for three years, the provisions of Rule 144(d) are also used to compute the three-year period. 17 C.F.R. § 230.144(k). Based on these regulations, Pantheon advised AST in its May 21, 1993 letter that A.R.G.I. was not entitled to the removal of the restrictive legend because a promissory note (the A.R.G.I. note), delivered as payment for the shares, had not been paid and, thus, the shares were "not eligible to have the restricted legend removed under any condition."

Pantheon's claim of nonpayment was later implied by A.R.G.I.'s attorney, T. Michael Daggett (Daggett), in his June 15, 1993 letter (the Daggett letter) to AST. Notwithstanding the certificate's statement on its face that the shares were fully paid and non-assessable, he stated, in part, that the consideration paid for the certificate was a $40,000 promissory note made payable to Pantheon Studios, a subsidiary of Pantheon, and other consideration. He further stated:

> The promissory note was made payable to Pantheon Studios, Inc., so Pantheon could fairly represent that the 2,000,000 shares had been paid for. Accordingly, the shares were fully paid for and nothing was due Pantheon from A.R.G.I., Inc. as a result of its purchase of the shares.

Even though Pantheon's May 21st letter and Daggett's response gave AST reason to question whether A.R.G.I.'s reissuance request would be "rightful" under § 4–8–401(1)(e), I cannot conclude, as a matter of law, that AST is immune from liability absent a legal opinion from A.R.G.I.'s attorney that the proposed action is permissible. No such basis for immunity exists under Rule 144 or § 4–8–401. Furthermore, none of the cases cited to support AST's contention, *Kenler v. Canal Nat. Bank,* 489 F.2d 482 (1st Cir. 1973), *Melville v. Wantschek,* 403 F.Supp. 439, 444–45 (E.D.N.Y.1975), and *Charter Oak*

*Bank & Trust Co. v. Registrar & Transfer Co., Inc.,* 141 N.J.Super. 425, 358 A.2d 505, 509–10 (1976), are controlling. In addition, *Kenler* and *Charter Oak* are distinguishable in that the restrictive legends in those cases expressly required, in part, an opinion of counsel, satisfactory to the company that registration was not required under the Act. *Kenler,* 489 F.2d at 483; *Charter Oak,* 358 A.2d. at 507. If the Colorado General Assembly or the SEC intended to provide immunity to a transfer agent absent an adequate legal opinion when a proposed transfer is questionable, they could have said so explicitly. It is not for me to supply this additional basis for immunity absent legislative intent that it be there. 73 Am.Jur.2d *Statutes,* § 314 (1974); *Andrus v. Glover Construction Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980) (construing federal law).

■ AST further contends that, as a transfer agent, it has no statutory duty to remove a restrictive legend. The enactment of § 4–8–406(1) rejected the common law principle precluding a transfer agent's liability to a stockholder in damages for mere "nonfeasance". Official comment 1 to § 4–8–406. This statute expressly holds transfer agents liable for the wrongful refusal to register a transfer and wrongful registration of a transfer in any case within the scope of a transfer agent's function where the issuer would itself be liable. *Id.* In this case, AST contends that as the transfer agent, it had no coextensive duty under § 4–8–406(1)(b) to remove the restrictive legend from the certificate since Pantheon, not AST, possessed the factual background or pertinent documents necessary to determine whether this action was "rightful". Thus, as the argument goes, common law principles apply here to immunize AST from liability to A.R.G.I. or Princeton. I disagree.

AST offers no legal authority for this unique interpretation of its co-extensive duty. Furthermore, A.R.G.I.'s reissuance request is the obvious first step in and a necessary incident to a contemplated transfer of the stock. *Kenler,* 489 F.2d at 485 (addressing this question in dictum). Accordingly, I con-

clude that A.R.G.I.'s reissuance request is considered a "request to transfer shares" within the meaning of § 4–8–401. Consequently, it falls within AST's coextensive duty under § 4–8–406.

### B.

■ Next, I address A & P's and Pantheon's motions. A & P contend that the reissuance request was rightful and, thus, they are entitled to summary judgment on their first claim for relief against AST and Pantheon. Pantheon opposes A & P's motion and moves for partial summary judgment on the ground that reissuance request was wrongful. Both of these motions will be denied because genuine issues of material fact exist. At a minimum, factual questions exist as to what consideration, if any, was given in exchange for the certificate and whether the full purchase price or other consideration was paid in full two years before A.R.G.I. requested the new certificate. *See* 17 C.F.R. 230.144(d). The evidence regarding consideration is clearly contested. It includes the following:

a) Eyman and Smith state that the consideration for the shares was services rendered, and secured guarantees issued by A.R.G.I. to Pantheon's accountants.

b) A.R.G.I. lists the following consideration for the stock in its answers to Pantheon's interrogatories: assistance and indemnification of financing for payment of audit for 1989 (A.R.G.I. and Q.I.C. provided Toback & Co. with 375,-000 shares of Minco stock which was worth $37,500 at that time); providing and paying for legal counsel for Pantheon; printing convertible notes; providing access to securities counsel with favorable rates to assist the company; providing 300,000 shares of Minco stock to guarantee a loan to Pantheon from Colonial Bonding Co.; and providing secretarial services.

c) Daggett states that the consideration paid for the shares "was a $40,000 promissory note and other consideration." The Daggett letter.

d) Various Pantheon documents state that the consideration for the shares was a $40,000 note, corporate guarantee of

loans, legal assistance and services. A & P Exhs. B, C and D; Pantheon's statement of facts contained in its memorandum opposing cross-motion.

Summary judgment is further inappropriate because a genuine issue of material fact exists concerning the nature and extent of the consideration, if any, which was actually received when the A.R.G.I. certificate was issued on March 12, 1990 and the consideration, if any, Pantheon later received for this stock. Article XV, § 9 of the Colorado Constitution states:

> No corporation shall issue stocks or bonds, except for labor done, service performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void.

Section 7–4–105 of Colorado's Corporate Code also addresses this issue:

> Payment for shares.
>
> 1) The consideration for the issuance of shares may be paid, in whole or in part, in money, in other property, tangible or intangible, or in labor or services actually performed for the corporation ...
>
> 2) The promise of future services shall not constitute payment or part payment for shares of a corporation.
>
> 3) Neither the promissory note of a subscriber or direct purchaser of shares from the corporation nor the unsecured or nonnegotiable promissory note of any other person shall constitute payment or part payment for shares of a corporation.

§ 7–4–105, 3A C.R.S. (1986) (repealed effective July 1, 1994); similar provision in recodification of the Colorado Business Corporation Act at § 7–106–202, 3A C.R.S. (1994 Supp.). Until these factual disputes are resolved, I cannot determine the ownership of the whole or any part of the 2,000,000 shares of Pantheon common stock.

■ Next, A & P contend that even if the re-issuance was correctly determined to be wrongful, they are still entitled to the Pantheon stock because Pantheon is estopped from claiming that the share certificate is

invalid. They rely in part on § 4–8–202(2)(a) which provides:

A certificated security in the hands of a purchaser for value ... even though issued with a defect going to its validity, is valid with respect to a purchaser if he is without notice of the particular defect, unless the defect involves a violation of constitutional provisions, in which case the security is valid with respect to a subsequent purchaser for value and without notice of the defect.

An official comment to this statute states "[f]ollowing the basic principles of negotiable instruments law, cases have generally held that an issuer is estopped from denying representations made in the text of a security." Official comment 2 to § 4–8–204 (citing *Delaware–New Jersey Ferry Co. v. Leeds,* 186 A. 913 (Del.Ch.1936) (a corporation will not be heard to deny that the representations of the certificate are true after it passed into the hands of a bona fide purchaser).

Section 4–8–202(2)(a) is insufficient to grant A & P's summary judgement motion. The alleged defect, unpaid consideration, involves a constitutional provision. Furthermore, as set forth above, a genuine issue of material fact exists as to whether A.R.G.I. qualifies as a purchaser for value when the certificate was issued in the first instance. Additionally, Princeton, assuming arguendo it is a subsequent purchaser for value, had notice of the alleged defect.

■ A & P further contend that they were entitled to have the certificate reissued as a bona fide purchaser under § 4–8–401(1)(e). A "bona fide purchaser" is a purchaser for value in good faith and without notice of any adverse claim. § 4–8–302(2). Although a genuine dispute exists whether A.R.G.I. was a purchaser for value when the certificate was issued in the first instance, it cannot claim this status as the party requesting reissuance. Simply put, A.R.G.I. would not be taking the reissued certificate by purchase or for value. *See* § 4–1–201(33) and 201(44). Furthermore, A.R.G.I. and Princeton had notice of Pantheon's adverse claim.

Next, A & P contend that Pantheon and AST are estopped from alleging, three years after the fact, that the shares were not paid

fully when issued given that the face of the certificate states that the shares are "fully paid and nonassessable". They cite *Dickerman v. Northern Trust Co.,* 176 U.S. 181, 20 S.Ct. 311, 44 L.Ed. 423 (1900) for the proposition that "as between the corporation and its stockholders the declaration that the shares are fully paid up and unassessable is a valid one". *Id.* at 203, 20 S.Ct. at 319. However, unlike here, the stockholders/bondholders, to whom the Court was referring in *Dickerman,* were innocent. For example, the Court stated "we know of no principle upon which it can be held that innocent bondholders can be required to deduct from the face of their bonds the amount unpaid on their stock". *Id.* at 202, 20 S.Ct. at 319.

■ Moreover, the party asserting an estoppel claim must demonstrate that he reasonably relied to his detriment upon the acts or representations of the other party and that he had no knowledge or convenient means of knowing the facts. *In re Marriage of Dennin and Lohf,* 811 P.2d 449, 450 (Colo. App.1991). The reliance asserted by the party claiming the estoppel must be justifiable or reasonable under the total circumstances. *Matter of Simineo v. Kelling,* 199 Colo. 225, 607 P.2d 1289, 1291 (1980). The requirement of reasonable reliance applies equally to both equitable estoppel and estoppel by deed. *Shell Oil Co. v. Trailer & Truck Repair Co., Inc.,* 828 F.2d 205, 209 (3rd Cir.1987) (applying New Jersey law).

■ The undisputed facts in this case lead to the conclusion that A.R.G.I.'s and Princeton's reliance, if any, were unreasonable given Eyman's and Smith's familiarity with the circumstances surrounding the issuance of the certificate. *Dime Box Petroleum Corp. v. Louisiana Land and Exploration Co.,* 717 F.Supp. 717, 723 (D.Colo.1989), *aff'd,* 938 F.2d 1144 (10th Cir.1991) (Notice to an agent of a corporation in discharge of official duties, of material facts, is the knowledge of the corporation.) Accordingly, I hold that neither AST nor Pantheon are estopped from asserting that the Pantheon stock at issue here was not fully paid when issued.

Pantheon also moves for summary judgment on the ground that A.R.G.I. agreed in a

settlement agreement (the agreement), Pantheon's exh. V, to return the stock if it failed to bring the notes current. Recognizing that Eyman and Smith signed this agreement in their individual capacities, Pantheon cites Nevada law, the state of A.R.G.I.'s incorporation, for the proposition that if an agreement is signed by all of the shareholders of the corporation, it binds the corporation. Nev.Rev.Stat.Ann. § 78A.070(1) (1994) (All shareholders of a close corporation who are entitled to vote may agree in writing to regulate the exercise of the corporate powers and the management of the business and affairs of the corporation). The undisputed evidence in the case, however, proves that Eyman was not an A.R.G.I. shareholder, much less the sole shareholder. Eyman's affidavit, ¶ 8. Therefore, absent the production of a written agreement of A.R.G.I.'s shareholders authorizing Eyman's individual signature on contracts to bind the corporation, I cannot conclude, as a matter of law, that Eyman's signature on this agreement binds A.R.G.I. to pay the note. Summary judgment will not enter in Pantheon's favor on this basis.

### C.

■ Lastly, I consider Princeton's involvement in this case. AST contends that it owed Princeton no statutory duty because the undisputed evidence shows that A.R.G.I. was the only party requesting the certificate's reissuance. I agree. Neither Princeton nor A.R.G.I. offer any evidence from which I can conclude that AST or Pantheon owed Princeton any duty under § 4–8–401. A party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather the non-moving party "must set forth specific facts showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e). Accordingly, summary judgment is appropriate and Princeton's § 4–8–401 claim for relief against AST and Pantheon will be dismissed.

Accordingly, it is ORDERED that:

1) AST's motion for summary judgment is DENIED in part and GRANTED in part;

2) A & P's cross-motion for partial summary judgment is DENIED;

3) Pantheon's motion for partial summary judgment is DENIED in part and GRANTED in part;

4) Princeton's first claim for relief against AST and Pantheon is DISMISSED with prejudice.

### JUDGMENT

PURSUANT TO and in accordance with the Memorandum Opinion and Order signed December 2, 1994, by the Honorable Lewis T. Babcock, United States District Judge, it is

ORDERED that judgment is entered in favor of plaintiff American Securities Transfer, Incorporated, and defendant Pantheon Industries, Inc., and against defendant Princeton American Corporation, as to Princeton's first claim for relief against AST and Pantheon, and the first claim for relief is dismissed with prejudice.