**Francis R. SALAZAR, Plaintiff–Appellant,**

**v.**

**CLANCY SYSTEMS INTERNATIONAL, INC., Defendant–Appellee.**

**No. 04CA2347.**

Colorado Court of Appeals, Div. I.

Sept. 7, 2006.

David Sean Carroll, Denver, Colorado, for Plaintiff–Appellant.

Burns, Figa & Will, P.C., Dana L. Eismeier, Alix L. Joseph, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge KAPELKE *.

Plaintiff, Francis R. Salazar, appeals from the trial court's summary judgment in favor

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

of defendant, Clancy Systems International, Inc. The judgment determined that plaintiff's tort claims relating to restrictive legends on stock certificates were preempted by state statute. We reverse and remand for further proceedings.

According to plaintiff's complaint, in May 1993, six million shares of defendant's stock were transferred to plaintiff by Robert B. Brodbeck through an "Agreement and Bill of Sale." Plaintiff alleges that at the time of the transfer he did not receive the stock certificate because Brodbeck either had lost it or had never received it himself.

In late 1999 or early 2000, the value of defendant's stock appreciated substantially in value, and plaintiff attempted to sell the shares he allegedly owned. Brodbeck signed an affidavit of loss, which plaintiff submitted to defendant's transfer agent in March 2000. He also submitted other documents required to have the stock certificate reissued in his name, as well as a cashier's check to cover the bond for the reissuance of a lost certificate. Plaintiff requested that the new certificate be issued without any restrictive legend.

Defendant authorized the transfer agent to issue a replacement certificate to plaintiff, but only with a restrictive legend. The restrictive legend required plaintiff to hold the stock for a minimum of two years from the reissue date before he could sell it in the open market.

In April 2000, plaintiff asked the transfer agent to remove the restrictive legend. In response, defendant asserted that the restriction was appropriate, stating: "The stock was issued in March 2000—per rule 144—the holding period *must* apply."

Defendant requested that plaintiff provide the original 1993 agreement and bill of sale, an explanation why the stock transfer had not been previously reflected in any Securities and Exchange Commission (SEC) documents, and a legal opinion stating that the removal of the restrictive legend would not violate SEC Rule 144.

The opinion letter was ultimately provided in May 2000, and in June 2000, the transfer agent reissued the stock certificate to plaintiff without the restrictive legend.

Plaintiff filed this action on March 13, 2002, alleging in his complaint that the value of his stock had depreciated by approximately $2 million between the time of his initial request for a certificate and the date the certificate was reissued without the restrictive legend. He asserted, as relevant here, tort claims of trespass to chattel and intentional interference with prospective advantage, alleging that defendant's inclusion of the restrictive legend was wrongful and malicious and deprived him of his legal right to sell the stock.

Defendant moved for summary judgment, asserting that plaintiff's common law tort claims were preempted by the Uniform Commercial Code (UCC), specifically § 4–8–401, C.R.S.2005. The trial court granted summary judgment in favor of defendant.

## I.

Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment and in concluding that plaintiff's common law tort claims were preempted by the UCC, specifically § 4–8–401. We agree.

Summary judgment is appropriate if the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. We review a summary judgment de novo. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002); *Loar v. State Farm Mut. Auto. Ins. Co.*, 143 P.3d 1083 (Colo.App. 2006); *see* C.R.C.P. 56(c).

As the supreme court has stated, "[W]here the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004); *see also Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo.

1992) (because statutes in derogation of the common law must be strictly construed, if the General Assembly intends to abrogate rights that would otherwise be available under the common law, it must manifest that intent expressly or by clear implication); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 148 (Colo.App.2003)("preexisting common law rights and remedies are not terminated absent clear legislative intent to abrogate them by the enactment of a new right").

The UCC provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions." Section 4–1–103, C.R.S.2005. Thus, common law tort remedies remain available unless a provision of the UCC clearly states otherwise.

It is generally recognized that when the UCC prescribes particular standards of care or limitations on liability, "the common law is annulled to the extent it modifies these standards or changes these limitations." *Equitable Life Assurance Soc'y v. Okey*, 812 F.2d 906, 909 (4th Cir.1987).

Similarly, a division of this court has stated, "If a statute creates legal duties and provides a particular means for their enforcement, the designated remedy excludes all others." *Minnick v. City & County of Denver*, 784 P.2d 810, 812 (Colo.App.1989).

Section 4–8–401 pertains to the duty of an issuer to register a transfer of securities, and § 4–8–406, C.R.S.2005, imposes a coextensive duty upon a transfer agent to register a transfer as requested. Section 4–8–401(b), C.R.S.2005, states:

> If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

While § 4–8–401(b) thus affords a remedy for a failure or refusal to register a transfer, we cannot say that this provision evinces a clear intent by the General Assembly to occupy the entire field regarding the transfer of securities, particularly with respect to the placement or removal of restrictive legends. Thus, we conclude that coextensive remedies under this provision and under the common law may exist here.

After noting in its order that § 4–8–401 "does not contain specific language regarding either the placement or removal of restrictive legends," the trial court nevertheless found that this provision preempted plaintiff's common law tort claims. The court based its conclusion on case law from other jurisdictions. Our review of those cases, however, does not lead us to the conclusion that preemption applies here.

In *American Securities Transfer, Inc. v. Pantheon Industries, Inc.*, 871 F.Supp. 400 (D.Colo.1994), a party requested issuance of a new stock certificate without a restrictive legend. The court found that §§ 4–8–401 and 4–8–406 applied to the reissuance request "as this is a predicate for transfer of the certificate." *Pantheon, supra*, 871 F.Supp. at 403. The court went on to conclude that the party's "reissuance request is considered a 'request to transfer shares' within the meaning of § 4–8–401." *Pantheon, supra*, 871 F.Supp. at 405.

However, the *Pantheon* court did not address the issue whether the UCC provision preempts common law claims—none were alleged in that case.

Here, the trial court may have been correct in noting in its order that "an issuer's duty to provide a replacement certificate without a restrictive legend, and liability for any unreasonable delay in doing so, falls under the purview of the transfer registration statute." *See In re Marriage of Devick*, 315 Ill.App.3d 908, 248 Ill.Dec. 833, 735 N.E.2d 153 (2000) (reviewing case law and concluding the Illinois counterpart of § 4–8–401 governs the imposition of restrictive legends). Nevertheless, that analysis of the statute's scope does not compel a conclusion that the availability of the statutory claim precludes common law claims.

Because none of the reported cases from other jurisdictions specifically address the issue of whether the UCC provides an exclusive remedy in the situation presented here,

and because we cannot say that the Colorado General Assembly intended to occupy the entire field, we conclude that § 4–8–401 does not preempt common law claims or remedies relating to the placement and removal of restrictive legends.

## II.

In its answer brief, defendant raises alternative arguments for affirming the summary judgment in its favor. Essentially, defendant asserts that its conduct with respect to the reissuance of the stock certificates was reasonable as a matter of law. Because each of the arguments requires resolution of genuine issues of material fact that remain in dispute, however, we cannot say that defendant is entitled to judgment as a matter of law at this stage of the proceeding.

The summary judgment is reversed, and the case is remanded for further proceedings in accordance with the views set forth in this opinion.

Judge MÁRQUEZ and Judge RUSSEL concur.