**130 Nev., Advance Opinion 78**

IN THE SUPREME COURT OF THE STATE OF NEVADA

PAUL GUILFOYLE, AN INDIVIDUAL;
AND CITYPOINT, LLC, A NEW YORK
LIMITED LIABILITY COMPANY,
Appellants,
vs.
OLDE MONMOUTH STOCK
TRANSFER COMPANY, CO., INC.,
Respondent.

No. 60478

FILED

OCT 02 2014



Appeal from a district court order granting summary judgment. Eighth Judicial District Court, Clark County; Kathleen Delaney and Susan Scann, Judges.

*Affirmed.*

Gordon Silver and Michael N. Feder and Joel Z. Schwarz, Las Vegas; Goodwin Procter, LLP, and Lloyd Winawer, Menlo Park, California, for Appellants.

Lionel Sawyer & Collins and Charles H. McCrea, Jr., and Ketan D. Bhirud, Las Vegas, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

We consider the liability of a stock transfer agent to a stockholder for giving an allegedly incomplete and misleading answer to a question about its requirements for removing a restrictive legend on his stock. Under NRS 104.8401 and NRS 104.8407 a transfer agent must, on

proper request, register a transfer of securities without unreasonable delay. But these statutes do not support liability here because the stockholder did not ask the transfer agent to remove the legend and reissue him clean shares and, without a request to act, the agent's statutory duty to register a requested transfer does not arise. The stockholder's common law claims also fail, because they are not supported by competent evidence. We therefore affirm summary judgment for the transfer agent.

I.

Appellants Paul Guilfoyle and Citypoint, LLC (collectively Guilfoyle), held stock in Pegasus Wireless Corp., a Nevada corporation. Respondent Olde Monmouth Stock Transfer Co., Inc. was the transfer agent for Pegasus. Guilfoyle's stock carried the following legend restricting its sale: "The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended and may not be sold or transferred without registration under said Act or an exemption therefrom." Guilfoyle believed that he had held the stock long enough and met the other requirements needed to qualify his stock for an exemption from registration under Securities and Exchange Commission (SEC) Rule 144,[1] and he asked John Lechner, a restricted securities client advisor at Deutsche Bank Securities, Inc. (DBS), about removing the restrictive legend so the stock could be resold. Lechner in turn asked Barbara

[1]Rule 144 provides a safe harbor under section 4(1) of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and permits shareholders to sell their restricted securities, provided they meet certain conditions, including volume and holding period limitations, and adequate public information is available. 17 C.F.R. § 230.144 (2013).

Walters, a DBS employee, to look into it. Walters located a telephone number and email address for Pegasus and left word that she wanted "their corporate counsel information . . . [s]o that we [could] request an opinion to remove the legend."

Key to this appeal, Walters also called and spoke to someone at Olde Monmouth, Pegasus's transfer agent. Walters' call to Olde Monmouth was essentially anonymous. She did not identify herself, the company she worked for, or Guilfoyle, saying only that she was calling from a brokerage firm about a client holding restricted Pegasus stock. Olde Monmouth has no record of the call, and Walters has given varying accounts of it. In her deposition, Walters testified that she said "we were looking to locate corporate counsel" information for Pegasus; in the affidavit she furnished Guilfoyle, Walters avers that she asked Olde Monmouth "to provide the name of counsel from whom it would accept a legal opinion that the restrictive legends could be removed from Pegasus stock certificate." Either way, Olde Monmouth responded by giving her the name and contact information for a lawyer named John Courtade, whom Pegasus had written Olde Monmouth several weeks earlier to designate as its counsel for legend removals under SEC Rule 144.

According to Walters, her telephone conversation with Olde Monmouth was brief, lasting "[m]aybe longer than a minute, not longer than five." When the call ended, Walters called Courtade. He expressed surprise that someone at Olde Monmouth had given her his name and said he could not provide an opinion letter unless directed to do so by Pegasus. Walters did not call Olde Monmouth back to tell them about Courtade's rebuff or communicate with Olde Monmouth again concerning Pegasus stock.

Olde Monmouth has internal written "procedures for removing legends under Rule 144," which, not surprisingly, draw on the Uniform Commercial Code (UCC) provisions governing securities transfers and SEC Rule 144 as written at the time the events in this case occurred. *See infra* note 2. The procedures require that a registered broker/dealer present the share certificates, properly endorsed, to Olde Monmouth with supporting signature guarantees and documents, including "a completed copy of signed and filed Forms 144," and a seller's certification "stating that the shareholder is not an affiliate of the issuer, nor has been for the preceding 90 days, and that the shares have been beneficially held for at least one year." Additionally, "[t]he share certificate(s) should be accompanied by a legal opinion from the Issuer['s] SEC attorney (stating that the sale is not in violation but in fact is in compliance with the exemption from registration requirements of Federal Securities laws)." If all criteria are met, Olde Monmouth "shall immediately remove the legend from the shares and transfer the shares into 'street name.'" If the request arrives otherwise complete but with no supporting legal opinion, the procedures direct that it be forwarded to the issuer's SEC attorney with a request for "the appropriate legal opinion." Should a request arrive supported by "a legal opinion from someone other than the Issuer's SEC Attorney (an 'outside opinion')," again, the procedures direct that Olde Monmouth "forward all [the] documents to and request [the appropriate] legal opinion from the Issuer's SEC Attorney." Finally, if "the Issuer's SEC Attorney has not responded to the request for approval of the outside legal opinion after 15 days," Olde Monmouth will process the legend removal request based on the outside opinion.

Olde Monmouth did not disclose these internal procedures to Walters or mention that Courtade was the fourth in a series of lawyers Pegasus had designated as SEC counsel over the past year. But DBS client adviser Lechner was a "major player in restricted securities" and Walters, whose job was to "assist in obtaining legend removals from stock," already knew that a Rule 144 opinion from outside counsel might be used to support a request for legend removal. This is shown by Walters' email to Lechner sent the day she spoke to Olde Monmouth and Courtade, wherein Walters relates her lack of success rousing anyone at Pegasus, her unhelpful conversation with Courtade, and a pending dispute between Pegasus and an affiliate's co-founder, Tsao, over Tsao's restricted stock. Noting the lack of industry consensus at that time (2006) over legend removal not connected to an actual sale, she suggests Guilfoyle (and Citypoint) "may want to solicit their own counsel to render an opinion to remove the legend under 144(k)."[2]

Guilfoyle never submitted his shares to Olde Monmouth with a request to remove the legend. Nor, from what appears, did he bring his shares to his broker, DBS, or complete DBS's form "request for removing a restrictive legend," so DBS could initiate the process. He also did not pursue a Rule 144 opinion from independent counsel. DBS's records show that Walters and another DBS employee called and emailed Pegasus

---

[2]In February 2008, subsection 144(k) was eliminated and substantively similar provisions were added to other parts of SEC Rule 144. *See* 17 C.F.R. § 230.144(b)(1)(i) (2013). The facts giving rise to this suit predated these amendments.

several more times, to no avail. Meanwhile, Pegasus stock plummeted, rendering Guilfoyle's stock essentially valueless.

Sometime later, the SEC learned that two of the principal officers of Pegasus had defrauded investors by, among other things, issuing shares to their relatives and falsely reporting that the shares went to pay off outstanding promissory notes that, in fact, were backdated and bogus, thus diluting the value of legitimate investors' shares. The SEC pursued the officers civilly and criminally, ultimately obtaining a consent decree and convictions.

Guilfoyle sued Pegasus and its defalcating officers and recovered judgment against them. When Pegasus filed bankruptcy, Guilfoyle commenced suit against Olde Monmouth. His theory was (and is) that Olde Monmouth misled Walters into believing only an opinion letter from Pegasus's corporate counsel would do when, in fact, Olde Monmouth would have accepted an opinion letter from independent counsel and removed the legend if Pegasus proved nonresponsive; removing the legend, Guilfoyle alleges, would have enabled him to sell his shares before their value fell. He also faults Olde Monmouth for not advising Walters that Courtade had only recently been named and was the fourth in a series of counsel Pegasus had designated over the preceding year. On these bases, Guilfoyle asserted claims for: (1) violation of NRS 104.8401 and NRS 104.8407; (2) negligent and fraudulent misrepresentation; (3) aiding and abetting Pegasus's officers' breach of fiduciary duty; and (4) conspiracy.

After discovery and amendment of the pleadings, the district court granted Olde Monmouth's motion for summary judgment. Guilfoyle appeals.

## II.

Because the district court resolved this case on summary judgment, our review is de novo and we take the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). We will affirm if the record, viewed in that light, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. NRCP 56. "Conjecture and speculation do not create an issue of fact." *Stockmeier v. State, Bd. of Parole Comm'rs*, 127 Nev. ___, ___, 255 P.3d 209, 212 (2011).

### A.

At common law, "a transfer agent [could not] be held liable to a stockholder in damages for . . . failure to act to remove [restrictive] legends," or refusal to register a requested stock transfer. *Kenler v. Canal Nat'l Bank*, 489 F.2d 482, 485 (1st Cir. 1973). "Such failure or refusal was merely nonfeasance for which the . . . agent was liable to the corporation alone, and for which [the corporation] in turn was liable to those injured thereby, because a stock transfer agent owed no duty to a shareholder." 12 William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5525 (2004). Article 8 of the UCC, enacted in Nevada as NRS 104.8101 through NRS 104.8511, partially abrogates the common law as to transfer agents. *See* UCC § 8-407 cmt. 1 (1994). It makes a transfer agent's duty the same as an issuing corporation's in performing the statutory functions involved in processing a request to register a transfer of securities. NRS 104.8407.[3]

---

[3]Like UCC § 8-407 (1994), NRS 104.8407 provides: "A person acting as . . . transfer agent . . . for an issuer in the registration of a transfer of its

*continued on next page . . .*

 

Guilfoyle asserts that Olde Monmouth violated its statutory duties to him under the UCC. Since NRS 104.8407 defines a transfer agent's duty in terms of an issuer's, we look to NRS 104.8401, entitled "[d]uty of issuer to register transfer," in assessing Guilfoyle's UCC claim. Under NRS 104.8401, "[i]f a certificated security in registered form is presented to an issuer with a request to register transfer," the issuer "shall register the transfer" provided the following criteria are met:

(a) Under the terms of the security, the person seeking registration of transfer is eligible to have the security registered in his or her name;

(b) The endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(c) Reasonable assurance is given that the endorsement or instruction is genuine and authorized;

(d) Any applicable law relating to the collection of taxes has been complied with;

(e) The transfer does not violate any restriction on transfer imposed by the issuer in accordance with NRS 104.8204;

(f) A demand that the issuer not register transfer has not become effective under NRS 104.8403, or the issuer has complied with

---

. . . *continued*

securities, in the issue of new security certificates or uncertificated securities or in the cancellation of surrendered security certificates has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions."

subsection 2 of that section but no legal process or indemnity bond is obtained as provided in subsection 4 of that section; and

(g) The transfer is in fact rightful or is to a protected purchaser.

"If any of the preconditions do not exist, there is no duty to register transfer." UCC § 8-401 cmt. 1 (1994); *see also Catizone v. Memry Corp.*, 897 F. Supp. 732, 736 (S.D.N.Y. 1995) (a transfer that violates the federal securities laws "cannot be considered rightful," meaning that a transfer agent "has no duty to register a transfer" in that instance). But if the statutory terms are met, so that "[the] issuer is under a duty to register a transfer of a security, the issuer is liable to the person presenting a certificated security . . . or his or her principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." NRS 104.8401(2).

The phrase "request to register transfer" in NRS 104.8401(1) applies to a request to remove a restrictive legend from a person's shares, equally with its more obvious object of a request to register a transfer of shares from one person to another. The "realities of the securities transfer process" are such that "[w]here certificated stock is transferred, the issuance of a new certificate to the transferee is normally an integral step in that process. And where the stock is restricted, the issuance of a new, clean certificate to the transferor is normally the essential first step." *Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986). Thus, "even without a request to register a transfer of the underlying stock, the issuer's duty"—and, by extension, a transfer agent's duty—"to register a transfer of shares under Section 8-401 extends to a request to issue to the owner a new clean certificate for the same amount of shares." J. William

SUPREME COURT
OF
NEVADA

(O) 1947A

Hicks, *Resales of Restricted Securities* § 4:5 (2014) (discussing UCC § 8-401 (1994)).

While NRS 104.8401(1) *can* apply to legend removal requests, it does not apply here because Walters' brief telephone call with Olde Monmouth did not meet the statute's requirements for a "request to register transfer." The statutory "duty to register transfers exists only if: a registered security is presented to it; the certificate is accompanied by a request to register the transfers; and the requestor has satisfied the preconditions that subsection 8-401(1) authorizes the issuer to impose before registering the transfer." 7 Frederick H. Miller, *Hawkland Uniform Commercial Code Series* § 8-401:02 (2013). Presentation of a properly supported "request to register transfer" (or here, request to remove a legend) is the sine qua non of an NRS 104.8401 claim: "Perhaps the most obvious requirement that must be satisfied before the . . . duty to register a transfer arises [is] that the certificate be presented." *Id.* And, the other conditions stated in NRS 104.8401(1) must be satisfied as well. *See Kolber v. Body Central Corp.*, 967 F. Supp. 2d 1061, 1066 (D. Del. 2013) (the issuer was not obligated to respond to a shareholder's emails before the shareholders actually requested legend removal backed by a Rule 144 opinion as required by the restrictive legend in that case); *Schloss v. Danka Bus. Sys., PLC*, No. Civ. 0817 (DC), 2000 WL 282791, at *7 (S.D.N.Y. Mar. 16, 2000) (dismissing complaint where the shareholders "did not allege that they presented the stock certificates in transferable form[;] there was no duty on defendants to transfer shares with restrictive legends on them"); *Merkens v. Computer Concepts Corp.*, 76 F. Supp. 2d 245, 250 (E.D.N.Y. 1999) (under Delaware law, which adopts the UCC, the issuer is not required to register a transfer until it receives the signature

guarantee required by Del. Code Ann. tit. 6, §§ 8-401(1)(b) and 8-402 (1995));[4] *Nash v. Coram Healthcare Corp.*, No. 96 Civ. 0298 (LMM), 1996 WL 363166, at *3 (S.D.N.Y. June 28, 1996) (dismissing shareholder complaint alleging breach of duty to register a securities transfer where the shares were not presented for transfer).

Here, Guilfoyle did not meet *any* of the requirements of NRS 104.8401(1). Neither he nor his broker, DBS, presented his Pegasus shares to Olde Monmouth or asked Olde Monmouth to remove their restrictive legend. During her call with Olde Monmouth, Walters did not identify Guilfoyle or his circumstances, so Olde Monmouth would have had no way of knowing whether Guilfoyle could meet the requirements in NRS 104.8401(1) (much less the registration exemption requirements in SEC Rule 144). Viewing the facts in the light most favorable to Guilfoyle, the most that can be said is that Walters asked for "the name of counsel from whom it would accept a legal opinion that the restrictive legends could be removed" from an unknown number of Pegasus stock certificates. In response, Olde Monmouth furnished contact information for Pegasus's designated SEC counsel. Olde Monmouth was not statutorily obligated to do more. *See Kolber*, 967 F. Supp. 2d at 1066 (the issuer was not liable to the stockholder under the UCC where, after providing contact information for the issuer's attorney, it did not answer follow-up emails asking about specific procedures; the issuer did timely provide an opinion from corporate counsel).

---

[4]Del. Code. Ann. Tit. 6, § 8.401(1)(b) (1995) was renumbered in 1997 (71 Del. Laws, c. 75, § 1, eff. Jan. 1, 1988) to § 8.401(a)(3); the operative language remains identical.

Olde Monmouth's failure to disclose its internal procedures for dealing with outside counsel's opinions is not the legal equivalent of a refusal to timely process a request to register a transfer or remove a legend. The cases on which Guilfoyle relies for that proposition, principally *Bender* and *American Securities Transfer, Inc. v. Pantheon Industries, Inc.*, 871 F. Supp. 400, 403-04 (D. Colo. 1994), are distinguishable. In both, the shareholder requested that the restrictive legend be removed and tendered the stock certificates for reissuance. *Bender*, 514 A.2d at 1118 (noting that "Bender presented her shares to [the issuer] to register the transfer"); *Pantheon*, 871 F. Supp. at 402 (noting that the shareholder "submitted the certificate to [the transfer agent] and requested that a new stock certificate be issued . . . without the restrictive legend"). The dispute was whether, given the competing demands and conflicting legal opinions, the transfer qualified as "rightful" in the meaning of UCC § 8-401(1). *Bender*, 514 A.2d at 1116-17; *Pantheon*, 871 F. Supp. at 402. In this case, by contrast, Guilfoyle and his broker, DBS, never engaged the statutory transfer process by submitting a transfer request. *Cf. Nash*, 1996 WL 363166, at *3 (distinguishing *Bender* and similar cases because "the shares in this instance were neither in registered form nor presented to the issuer" for transfer). Summary judgment on Guilfoyle's NRS 104.8401 and NRS 104.8407 claim thus was proper.

B.

As noted above, at common law a transfer agent's duty in respect to registering a transfer ran to the corporation, not the shareholder, so the transfer agent was not liable to the shareholder for mere nonfeasance. But "misfeasance," as distinguished from nonfeasance, "was at common law, and remains, a recognized basis for a lawsuit by a

shareholder against a transfer agent." *Campbell v. Liberty Transfer Co.*, No. CV-02-3084, 2006 WL 3751529, at *17 (E.D.N.Y. Dec. 19, 2006).[5] Guilfoyle's negligent and fraudulent misrepresentation, aiding and abetting, and conspiracy claims arguably assert misfeasance, so we turn to them next.

1.

In Nevada, negligent misrepresentation and fraudulent misrepresentation both require that the defendant supply "false information," *Halcrow, Inc. v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 302 P.3d 1148, 1153 (2013) (stating the elements of a negligent misrepresentation claim, citing Restatement (Second) of Torts § 552 (1977)), or make a "false representation." *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992) (stating the elements of a fraudulent misrepresentation claim). Here, Olde Monmouth gave a truthful answer to Walters' telephone inquiry for "the name of counsel from whom it would accept a legal opinion": John Courtade was Pegasus's designated counsel for SEC Rule 144 opinions; per its written internal procedures, Olde Monmouth (a) would not process a transfer request without soliciting approval from him as Olde Monmouth's designated SEC counsel; and (b) would accept an SEC 144 exemption opinion from Courtade.

---

[5]We express no opinion as to whether NRS 104.8401 and NRS 104.8407 displace the common law remedies available against a transfer agent for misfeasance. *Cf. Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1239 (Colo. 2008) (holding that Colorado's UCC-based counterpart to NRS 104.8401 displaces common law claims against an issuer for wrongful delay or failure to process a request to register a transfer of securities).

SUPREME COURT
OF
NEVADA

(O) 1947A

Except for Courtade's contact information, Walters' phone conversation with Olde Monmouth approximates what Guilfoyle could have learned by consulting the SEC's website:

> Even if you have met the conditions of Rule 144, you can't sell your restricted securities to the public until you've gotten the legend removed from the certificate. Only a transfer agent can remove a restrictive legend. *But the transfer agent won't remove the legend unless you've obtained the consent of the issuer—usually in the form of an opinion letter from the issuer's counsel—that the restrictive legend can be removed.*

U.S. Securities and Exchange Commission, *Rule 144: Selling Restricted and Control Securities*, https://www.sec.gov/investor/pubs/rule144.htm (last visited Sept. 9, 2014) (emphasis added). Walters did not request more information and Olde Monmouth did not provide Walters "false information" or make a "false representation of fact" in response to the generic inquiry she made. That Olde Monmouth provided Walters correct information dispositively distinguishes *Nevada National Bank v. Gold Star Meat Co., Inc.*, 89 Nev. 427, 430, 514 P.2d 651, 653 (1973), on which Guilfoyle relies, wherein the defendant bank's officer had attested as to a company's creditworthiness, even though the company was "not in fact a depositor in his bank and . . . he had no accurate means of assessing [its] credit status."

The "deemed approved" mechanism in Olde Monmouth's internal procedures for situations where an issuer's counsel ignores a forwarded request for legend removal based on an outside opinion for more than 15 days was not information Olde Monmouth needed to volunteer during a five-minute phone call from an unidentified brokerage firm employee. Guilfoyle suggests that Olde Monmouth deliberately sent

SUPREME COURT
OF
NEVADA

(O) 1947A

Walters on a wild goose chase by giving her contact information for Courtade. But the uncontroverted evidence belies this allegation. Olde Monmouth presented competent evidence establishing that (1) it processed 26 requests to have legends removed from Pegasus shares during the relevant time period, 23 of which it honored and three of which it rejected as incomplete or assertedly not qualifying under SEC Rule 144; (2) it would have done the same for Guilfoyle if DBS had presented a request on his behalf; and (3) it had no agreement, tacit or express, with Pegasus not to process legend removal requests from persons not part of its officers' fraudulent scheme. The high turnover in corporate counsel at Pegasus, while unusual, does not support that, when Walters called, Olde Monmouth knew or had reason to know that Courtade would refer her back to Pegasus and that Pegasus would not respond.[6] Guilfoyle's argument that, when Olde Monmouth spoke to Walters it knew it needed to disclose more than Courtade's name and contact information to prevent its statement from being misleading is conjectural and therefore fails. *Cf.* Restatement (Second) of Torts § 551(2)(b) (1977) (imposing a duty on a "party to a business transaction . . . to exercise reasonable care to disclose to the other before the transaction is consummated . . . matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading"). To the extent Guilfoyle relies on events that occurred after Walters' call to impose a duty to supplement its original response, he cannot prevail because, among other

---

[6]The several transfer requests supported by outside opinions that Olde Monmouth forwarded to Courtade, to which Courtade did not object, were not acted on until after the Walters call.

reasons, Walters did not identify herself or Guilfoyle to Olde Monmouth so Olde Monmouth could contact her. She also did not call Olde Monmouth again to ask for help when she ran into problems with Pegasus. *See id.* § 551(2)(c) & (d) (discussing duties of updated disclosure with respect to subsequently acquired facts).

Guilfoyle argues that Olde Monmouth and he, through Walters, had a special relationship giving rise to a duty of full disclosure. *See id.* § 551(2)(a) (stating duty of disclosure that arises by virtue of "a fiduciary or other similar relation of trust and confidence between" parties). The record offers no evidence to support this claim. Olde Monmouth did not step outside its role of transfer agent, *cf. Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152 (1972) (if the "bank had functioned merely as a transfer agent, there would have been no duty of disclosure here"); there was no "special relationship" by which Guilfoyle or Walters "reasonably impart[ed] special confidence in the defendant and the defendant would reasonably know of this confidence." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 271, 21 P.3d 11, 15 (2001).

2.

Aiding and abetting the breach of a fiduciary duty has four required elements: (1) there must be a fiduciary relationship between two parties, (2) that the fiduciary breached, (3) the defendant third party knowingly and substantially participated in or encouraged that breach, and (4) the plaintiff suffered damage as a result of the breach. *In re Amerco Derivative Litig.*, 127 Nev. ___, ___, 252 P.3d 681, 701-02 (2011); *Mahlum*, 114 Nev. at 1490, 970 P.2d at 112. Assuming Pegasus breached a fiduciary duty to Guilfoyle, Guilfoyle failed to present evidence that Olde

Monmouth knowingly and substantially participated in or encouraged that breach. Guilfoyle presented no evidence to show that Olde Monmouth knew about Pegasus's lack of responsiveness to Walters, let alone that Olde Monmouth knowingly participated in or encouraged Pegasus's actions. Summary judgment thus was proper on Guilfoyle's civil aiding or abetting a breach of fiduciary duty claim.

3.

Finally, the record reveals no genuine issue of material fact as to Guilfoyle's civil conspiracy claim. Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent "to accomplish an unlawful objective for the purpose of harming another," and damage results. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). Thus, a plaintiff must provide evidence of an explicit or tacit agreement between the alleged conspirators. *Mahlum*, 114 Nev. at 1489, 970 P.2d at 112. Summary judgment is appropriate if there is no evidence of an agreement or intent to harm the plaintiff. *Consol. Generator-Nevada*, 114 Nev. at 1311, 971 P.2d at 1256.

Guilfoyle presented evidence that Pegasus asked Olde Monmouth to restrict certain shareholders (chiefly, the former co-founder of an affiliate, Tsao, and those related to him) from transferring shares, because, according to Pegasus, they did not qualify for exemption from the federal securities registration laws. In return, Pegasus agreed to indemnify Olde Monmouth for any damages arising out of Olde Monmouth's failure to lift the restrictive legend on these specific shareholders' stock certificates. However, Guilfoyle was not one of the shareholders Pegasus listed as restricted and nothing in the record suggests that Olde Monmouth would not have processed a legend removal

request on his behalf in due course, as it did for more than 20 other Pegasus shareholders during the relevant time period.

Thus, even considering this evidence in the light most favorable to Guilfoyle, it does not show an issue of fact as to Guilfoyle's conspiracy claim. Although direct evidence of an agreement to harm the plaintiff is not required, Guilfoyle has presented no circumstantial evidence from which to infer an agreement between Pegasus and Olde Monmouth to harm Guilfoyle. *See Consol. Generator-Nevada*, 114 Nev. at 1307, 1311, 971 P.2d at 1253, 1256 (affirming summary judgment on the plaintiff's conspiracy claim because there was no evidence that the two defendants had agreed and intended to harm the plaintiff, even where the defendants were aware that there were problems with the product purchased by plaintiff).

We therefore affirm the district court's grant of summary judgment in favor of Olde Monmouth.

_____ , J.
Pickering

We concur:

_____ C.J.
Gibbons

_____ , J.
Parraguirre

_____ , J.
Cherry

_____ , J.
Hardesty

_____ , J.
Douglas

_____ , J.
Saitta


(O) 1947A